[No. 15341.   Department One.—June 11, 1894.]

## MAURITZ E. LYNN, RESPONDENT, *v.* SOUTHERN PACIFIC COMPANY, APPELLANT.

APPEAL—INSTRUCTION NOT EXCEPTED TO—LAW OF CASE—REVIEW OF EVIDENCE.—Where no exceptions are taken to the charge of the court to the jury, the charge becomes the law of the case upon appeal in the consideration of the sufficiency of the evidence to support the verdict.

ID.—PRESUMPTION UPON APPEAL—APPLICABILITY OF INSTRUCTIONS TO EVIDENCE—VERDICT NOT AGAINST LAW—INSUFFICIENCY OF EVIDENCE. All presumptions upon appeal are in favor of the verdict, and if the court's charge to the jury includes instructions of law sufficient to support it, when applied to the evidence found in the record, the verdict must be upheld as not against law, even though there be no sufficient evidence to support the verdict upon some other theory of the case covered by other instructions of the court.

NEGLIGENCE OF RAILROAD COMPANY — OVERCROWDED TRAIN — JOLTING PASSENGER FROM PLATFORM—CONTRIBUTORY NEGLIGENCE.—A railroad company is guilty of negligence in running a heavily overloaded train of passenger-cars at such a rapid rate of speed over a curved track and cross-tracks, as to occasion a jar or jolt severe enough to throw some of the passengers down, and a passenger who is riding upon the platform, owing to the overcrowded condition of the cars, and who is jolted off, is entitled to damages from the company for injuries received thereby, and cannot be said to be guilty of contributory negligence.

ID.—DUTY OF COMPANY AS TO OVERCROWDED TRAIN.—A railroad company has the right to refuse to move its passenger trains if they become overcrowded, and it is unable to prevent the overcrowding; but if it does not pursue this course, and undertakes to transport all the passengers on board, whether within the cars or on the platforms, it is bound to exercise the additional care commensurate with the perils and dangers surrounding the passengers by reason of the overcrowded condition of the cars

ID.—RIGHT OF PASSENGER TO RIDE UPON PLATFORM.—One who boards a crowded passenger-car has a right, in the absence of any warning not to do so, to stand and ride upon the platform, if there is no room within the car, and is entitled to the same care and consideration as any other passenger.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. H. L. Barnes,* for Appellant.

*Cope, Boyd, Fifield & Hoburg,* for Respondent.

GAROUTTE, J.—This is an action to recover damages for injuries received by the plaintiff while a passenger upon the road of the defendant. The injuries were of a permanent character and very serious, and the verdict of seven thousand five hundred dollars is not assailed as being excessive. The defendant appeals from the judgment and order denying a motion for a new trial.

The record discloses no exceptions taken to the introduction or exclusion of testimony. Neither are there any exceptions taken to the charge of the court. A motion for a nonsuit was made, and denied, and this appeal is now before us upon the question as to the sufficiency of the evidence to support the verdict of the jury. There being no exceptions to the charge of the court—and it is possible no just exception could have been made thereto—the law by which we are to be guided in considering the merits of this appeal is settled, and all investigation upon that point foreclosed; for the law of the case, as far as the decision of this court is concerned, is the law that guided the jury in its deliberations in the trial court.

The undisputed facts of the case may be stated as follows: Upon the thirtieth day of May, 1891, a legal holiday, the plaintiff was a passenger upon the defendant's train of cars traveling from San Francisco to Shell Mound Park, having purchased a return ticket. The train was an excursion train, there being a picnic at the aforesaid park. Late in the afternoon he boarded a train to return to the city, but, owing to the great number of people desirous of returning to the city at that time, he, in company with many others, was unable to secure room inside of the cars, and thereupon stood upon the platform. The exact cause of the accident is a disputed question, but in course of the return trip the plaintiff fell from the platform and was badly injured.

That portion of the charge of the court which is material to the present investigation is as follows:

"I instruct you, therefore, that if, from all the evidence given before you, you believe that the said train

stopped at Shell Mound station, the plaintiff was justified in taking passage thereon, unless you also believe the defendant or its servants gave warning to persons there in waiting not to take passage thereon, and that such warning was understood, or ought to have been understood, by the plaintiff; and, if he took passage thereon without such warning given, he was rightfully a passenger on said train, and it was then the duty of the defendant to furnish him room and accommodations inside of the passenger-car; *and further, if you believe that the plaintiff did not in fact hear or know of any warning given, if you believe any was given, then he cannot be affected by such warning, and was justified in taking passage on that train.*

" Keeping in mind what I have already said to you, I further instruct you that if, from all the facts and circumstances given in evidence before you, you find and believe that plaintiff was lawfully upon that train as a passenger within the rules just stated to you, upon the return passage from Shell Mound, and that the defendant failed to furnish him room inside the car by reason of its crowded condition, and that he was obliged to, and did, for that reason, stand and ride upon the platform, and if you believe that while he was so standing and riding on the platform the defendant, by its servants, negligently and carelessly managed and ran its said train at such a rate of speed, so that, by reason thereof, in passing over a curve in said railroad, . . . . that the car upon the platform of which plaintiff was so standing was, by reason of such careless, negligent management of the train, and by such rate of speed, so swayed, shaken, jarred, and jolted, that the plaintiff, without any fault or negligence on his part, but by or in consequence of the negligence of the defendant, as charged in the amended complaint, was thrown off from said car and the platform thereof to and on the ground, and thereby injured, your verdict will be for the plaintiff.

"I also instruct you that if a railroad company receives upon its cars more passengers than it can fur-

nish accommodations for inside the cars, and for that reason some are compelled to stand and ride on the platform, it is the duty of the company to take that condition of things into account in the management of the train and the rate of speed with which it is run. It cannot act in disregard of the actual state of things which it permits or suffers.   In that case the obligation of the railroad company to passengers whom it receives upon crowded cars is that it will furnish such increased and more watchful and solicitous care, skill, and attention as the crowded condition of the cars require.

"If, therefore, the crowd of passengers applying for passage or crowding upon the cars is so great that it cannot be controlled by the train officers, and thereby overcrowds and overloads the train, it is the right of such officers to hold the train until they can secure the proper control of it, and as between the company and passengers on board, to whom tickets have been sold for the trip, entitling them to travel thereon, it is the duty of the train officials to do so, and to furnish room inside to all such persons.   If they, however, proceed upon the trip without doing so, it is their duty to use the utmost care and diligence of very cautious persons for the safe carriage of the passengers, having regard to the actual location upon the train which the latter are compelled to take.   The omission to use such degree of care is negligence on the part of the company."

The verdict must be sustained upon all questions where a substantial conflict of evidence is presented by the record.   Measured by this test, respondent's evidence must be taken as true, and it follows that this train was traveling at a very rapid rate of speed, and, while so moving, owing to the fact that it was running upon a curved track, or over cross-tracks, or for both of these causes, a severe jar or jolt was occasioned which caused respondent to fall from the platform underneath the wheels of the car.   In this regard the plaintiff testifies as follows: "The train on this occasion ran faster than it ever did before.   It ran very fast. . . . . It ran

down to the mole very fast.   In my experience, it ran faster than it usually did going down there.   It continued at that rate of speed up to the time I fell. . . . . At the point where I was jolted off, the train was going unusually fast."   The manner of the accident is thus described by him: " The way I experienced it, the car was kind of going half over off the track and gave a sudden jolt, and the way in giving this jolt I lost my hold behind me of this iron rod I had hold of, and I felt myself going, and I fell off, and that was all I know of it.   One of the jolts was made near the switch there. [Pointing to the diagram.]   Well, it seemed the wheels struck, and kind of threw the car half way over like. That was the sensation I had, and I could hear everybody scream.   It broke my hold.   I don't remember what situation I went off in, or how I struck."

The witness, Miss Hilda Treanor, says: "After the train left Shell Mound and came down to the Oakland mole, it was running very fast.   I remember about the time Mr. Lynn fell off, or was thrown off, the train seemed to lurch a little bit.   When he was thrown off I heard an outcry among the ladies inside of the car. About that time I heard a great many exclamations of surprise, for instance, 'Gracious!' and 'My gracious!' and words meaning the same thing.   The lurch of the train partly threw down the persons who were standing within the aisle of the car.   It had the same effect upon them as it had upon me; it threw them down.   I mean by that I would have fallen upon the floor but for the people standing around me.   They went over on the seats against people who were sitting in the seats.   As far as I can recollect, people were unbalanced, and I myself would have fallen on the floor had there not been somebody I fell against.   As it was, I did not fall right over, and as far as I noticed everybody standing in the aisle the same thing happened to them."

Captain William Treanor says: "The train seemed to be running extremely fast, as I thought, as it came down the Oakland mole. . . . . The train gave a very

heavy lurch, and knocked a number of people down who were standing in the aisles where I was. I was standing up and the young lady just inside the door, and we both got knocked down, and fell over. I was facing the forward end of the car, and both of us got knocked over to the right. The women screamed. Some of them said the car must have jumped the track. I cannot remember that the car slowed up prior to that time. . . . . The train ran faster than I have been in the habit of feeling trains run. . . . . I thought it ran faster than I had ever seen it run on that road. . . . . But where I saw the lurch down on the mole, I could not positively define the point, it was running at an extraordinary fast rate of speed."

The testimony of these witnesses is controlling upon these questions, and applying the law given by the trial court to the jury as to the great care which should be exercised by a common carrier where the cars were so heavily overloaded, as in the present case, the jury were entirely justified in saying that the defendant was guilty of negligence in running its train at the rate of speed that this train was moving, especially in view of the defects in the track or roadbed, whatever they may have been, that caused the jar or jolt to the cars, which, as we have seen, so greatly disturbed the passengers. The defendant should not have allowed so many passengers to have gone upon its cars, and, if it was unable to prevent them from so doing, it had the right to refuse to move the train under such circumstances; but, if it did not pursue that course, and undertook to transport all passengers that were on board, whether within the cars or upon the platforms, it was under obligations to exercise the additional care commensurate with the perils and dangers surrounding the passengers by reason of the overcrowded condition of the cars.

Was the plaintiff guilty of contributory negligence? In view of the instructions of the court, it is clear that he was not. In speaking as to the claim of the defendant that warning was given, the court instructed the

jury: "If you believe the plaintiff did not in fact hear or know of any warning given, if you believe any was given, then he cannot be affected by such warning, and was justified in taking passage on that train." The plaintiff testified in unequivocal terms that he did not hear or know of any warning given, and many other passengers testified to the same effect with reference to themselves. The evidence in this regard is sufficient to create a substantial conflict as to whether in fact the passengers were warned not to crowd the train and that a second train would soon arrive; but, beyond the question of conflict of evidence, the plaintiff says he heard and knew of no such warning, and, under the law given to the jury which we have just quoted, he had a right under those circumstances to go upon the train, and, if there was no room within the car, he then had a right to stand and ride upon the platform; and, being so situated by the force of circumstances over which the defendant, as we have seen, had complete control, he was a lawful passenger, with all the rights of any other passenger, and entitled to the same care and consideration at the hands of the company. The fact that he was compelled to stand upon the platform, and was thus more unfortunate and more inconvenienced than his friends who were able to crowd within the car, is wholly immaterial. Their legal rights were the same. The duties and obligations of the defendant to them were the same.

It is claimed the verdict is contrary to law in this, that the court charged the jury that if they found as a fact that other cars, reasonable in number and seating capacity, were produced by the defendant within a reasonable time, prior to or after the time at which plaintiff took his position on the car, and on which plaintiff might have safely ridden, and that plaintiff was apprised thereof, an eager desire on his part to take the overcrowded car in order to reach his destination was not a reasonable cause of necessity. The evidence covered by the instruction, substantially stated above, is not

such as to make the question one of law. It may be said that the evidence is fairly conflicting, both as to the additional accommodations to be furnished, and that the plaintiff was apprised thereof. Again, all presumptions are in favor of the verdict. And if the court's charge includes instructions of law sufficient to support the verdict when applied to the evidence found in the record, then the verdict must be upheld, even though there be no sufficient evidence to support the verdict upon some other theory of the case covered by other instructions of the court. It follows that if the evidence, when considered in the light of the law we have quoted, is sufficient to support the verdict, then the verdict cannot be against law.

We also think the motion for a nonsuit was properly denied. Much that we have already said as to the sufficiency of the evidence to support the verdict is opposed to appellant's contention in this regard. As we have seen, the evidence established a want of proper care in the running of the train at a high rate of speed, and doubly so when we consider that defects in the track or other causes existed which caused the severe jolting and jarring of the cars. Neither was the defendant guilty of contributory negligence in riding upon the platform under the circumstances depicted by his evidence. The law given to the jury by the court upon this point is entirely sound.

For the foregoing reasons, it is ordered that the judgment and order be affirmed.

HARRISON, J., and VAN FLEET, J., concurred.