## WEISSHAAR v. KIMBALL S. S. CO.

(Circuit Court of Appeals, Ninth Circuit.   March 1, 1904.)

No. 991.

1. SHIPPING—DROWNING OF PASSENGERS FROM OVERLOADING BOAT—DEFENSE OF CONTRIBUTORY NEGLIGENCE.

Where the officer in charge of a boat sent ashore from a ship to bring off passengers stated that she was overloaded, and requested some of the passengers to get out and wait until he could return, but, on their refusal to do so, made no further attempt to exercise his authority, but started, carrying 18 persons and a quantity of baggage, whereas the boat's capacity was 14 persons, and made no effort to return when, after reaching rough water, it became apparent that the boat was in great danger, and she swamped, and some of the passengers were drowned, the officer was chargeable with gross negligence, for which the ship is liable; and the contributory negligence of the passengers, if conceded, constitutes no defense to such liability, under the rule that such negligence will not defeat the action when it is shown that defendant might, by the exercise of proper and reasonable care, have avoided the consequences thereof.

2. SAME—LIMITATION OF LIABILITY—PRIVITY OR KNOWLEDGE OF SHIPOWNER.

Where the president of a steamship company was present in a small boat sent ashore by one of the company's ships, and acquiesced in the

---

¶ 2. Limitation of shipowner's liability, see note to The Longfellow, 45 C. C. A. 387.

action of the officer in charge in negligently permitting the boat to be overloaded, in consequence of which it was swamped, and a number of the passengers were drowned, such negligence of the officer was with "the privity or knowledge" of the company, which is not entitled to a limitation of its liability for claims arising out of the disaster, under Rev. St. §§ 4283–4285 [U. S. Comp. St. 1901, p. 2944].

Appeal from the District Court of the United States for the Northern District of California.

For opinion below, see 123 Fed. 838.

H. M. Wright, for appellant.

Nathan H. Frank, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. In September, 1900, the steamer Albion, owned by the appellee, Kimball Steamship Company, was anchored in Golovin Bay, Alaska, about a mile and a half from the beach; and, being ready to proceed on a voyage from that place to San Francisco, one of her small boats was sent, in charge of her second officer and two sailors, to the shore, to bring to the steamer such persons as intended to take passage on her. In returning, the boat capsized, and some of the passengers were drowned—among them, Louis G. Weisshaar. Of his estate Ella M. Weisshaar was afterwards appointed administratrix, and as such administratrix she commenced an action at law in the superior court of the city and county of San Francisco, state of California, against the appellee, for the recovery of damages in the sum of $40,000 for the death of her husband. That action had not been tried, but was at issue, when the appellee filed in the court below its petition, by virtue of sections 4283–4285 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 2944], for the purpose of contesting its liability for any damage or injury growing out of the accident, and for the purpose of limiting its liability in the event of being held responsible. In its petition the petitioner alleged that the overturning of the boat—

"Was in no way caused by fault or negligence on the part of the master or the crew of said steamer Albion, or any of them, and that the loss, damage, and injury, if any, thereby done, occasioned, or incurred, were without fault on the part of your petitioner, and without its privity or knowledge, but that the fault of the said swamping and overturning was due entirely to the acts and conduct of the passengers in said boat, in standing upon their seats in said boat and causing her to overturn, combined with inevitable accident occurring by reason of the condition of the wind and wave at the time of said swamping and overturning; that nevertheless certain persons have made claims against petitioner for losses arising out of said swamping and overturning, which said claims are for alleged loss of life of some of such passengers, and alleged loss of baggage so being transported as aforesaid; that among said claims is the claim of Ella M. Weisshaar, as administratrix of the estate of Louis G. Weisshaar, deceased, which said Louis G. Weisshaar is claimed by said claimant to have been one of the passengers so carried on said boat, and so drowned by reason of said swamping and overturning; that other claims have been asserted against your petitioner, and that other claimants have threatened to file libels against said steamer or to bring actions against your petitioner; and that your petitioner apprehends and is in fear that other claims in addition to those set forth will be presented against it, or said steamer Albion, by other

parties who may have sustained loss, damage, or injury by reason of the matters and things hereinbefore set forth."

It is further averred in the petition that there was freight pending by reason of the trip on which the steamer was engaged at the time of the accident, amounting to $2,265; that the value of the steamer at the close of the voyage did not exceed $15,000, and that the amount of the claims already presented, and as apprehended and threatened, far exceeds the value of the steamer and the pending freight; that there is no lien on the steamer prior or paramount to any lien that may have attached by reason of the matters alleged.

The value of the steamer and the freight pending were duly appraised, and the administratrix of the estate of the deceased, Weisshaar, answered the petition, putting in issue its material averments, and presenting a claim for damages for the drowning of her husband. In its opinion, the court below said:

"It sufficiently appears from the evidence that Louis D. Weisshaar was one of the persons drowned. It also appears that the boat upon the occasion referred to carried a greater number of persons than allowed by law, and also some baggage. It was down by the head, and so much overloaded that it had but little freeboard, and, in consequence thereof, as soon as the rough water of the bay was encountered, filled with water and capsized. Before it left the beach, the second mate of the Albion, who was in command of the boat, notified those who were in it that it was overcrowded, and asked some of them to get out and wait until the boat should return for them. Some of them did go ashore, but, assured by one of the passengers that there was room in the boat for more, most of them came back again; the officer still protesting that it was overcrowded. Such, in substance, is his testimony, and in this he is, to some extent, corroborated by Carville and De Lay, two witnesses whose depositions were offered in evidence by the claimant. The deceased had not actually engaged passage upon the steamer, but was going aboard for that purpose." 123 Fed. 838.

The court below very properly held that the petitioner, having undertaken to convey the deceased to the steamer for passage thereon, was under the same obligation to use proper care in transporting him as if he had paid for or engaged his passage in advance. The court below, however, further held that the deceased was guilty of contributory negligence in remaining in the boat after he and the other passengers therein were notified by the officer in command; that, "in so remaining, the deceased, as well as the other passengers in the boat, assumed the risk resulting from its overcrowded condition, and voluntarily encountered a danger which a prudent man with notice would have avoided." The court accordingly dismissed the claim of the administratrix of the estate of the deceased, Weisshaar, and entered a decree to the effect that the petitioner is not liable for damages growing out of the overturning of the boat.

The evidence shows that the capacity of the boat was 14 persons, without baggage. At the time of the accident in question it contained 18 persons, a trunk, 2 tool chests, and 3 or 4 sailors' bags. The boat was in charge of the second officer of the ship, who had under him two sailors, and, when ready to receive its passengers was stranded, with its bow well up on the sands of the beach. The evidence shows that the deceased, Weisshaar, was the fifth man to enter the boat, and took his seat about amidship. He had been preceded by a Capt. Tyson, and

by the president of the appellee steamship company, Mr. Marsden. In his direct examination the ship's officer in command of the boat was questioned and answered as follows:

"Q. State what happened at the shore before you left there, with respect to the passengers getting in, and your protesting, and whatever else happened? A. The passengers crowded into the boat, and I told them that 'this boat only holds fourteen passengers.' After some talk, five or six passengers went out of the boat, and went on the beach again. I was just going to leave, when Mr. Tyson sang out: 'There is lots of room. Come on, boys.' He mentioned a few names. Joe Corbell was among them. He says, 'There is lots of room.' Those passengers had left the boat, and I heard them say, 'I don't think we will lose our fresh-meat supper,' and they rushed into the boat the second time. Q. What did you do? A. I told them it was risky. The boat was overloaded, and there were three men left on the beach. I said: 'I have to go back to the beach and make another load. You might as well wait.' They laughed at me and told me I was a coward; that I was scared. I said: 'Well, boys, it is smooth water alongside the beach, but it will not be outside 20 or 30 yards. It will be rough. You had better do as I tell you.' They just laughed at me, and said I was afraid, and pushed the boat out, and out they went."

At the end of his direct examination this witness was asked, "Did you have any means or power to prevent them?" to which question he answered: "I had no power whatever. I was powerless. They took the command away from me, and took control of the boat, and I could not do nothing."

A careful perusal of the entire testimony of this witness, of itself, shows that there was no justification whatever for his statement that the boat was started on its perilous journey against his protest, or that the control of it was taken from him by the passengers. If powerless in the premises, it was only because he did not have the stamina to assert and exercise the authority with which he was clothed, and which the law and good seamanship made it his imperative duty to enforce. The evidence is overwhelming not only that he made no objection to starting the boat with its overload, but that, according to his own testimony, one, at least, of his own sailors took an active part in shoving it off the sand and into a floating condition, which appears without conflict to have been a matter of considerable difficulty; so much so that several of the passengers had to assist the sailors in accomplishing it— some by means of oars, and others, having high boots, by getting into the water and pushing the boat.

Let it be assumed that, when the officer announced that the boat was overloaded and that it was "risky," it became the duty of all the passengers to get out—as well those who had entered when there was ample room as those who had caused the overloading—and that every one who remained thereupon became guilty of contributory negligence; such fact becomes immaterial, in the face of the further fact that the officer, with full knowledge of the overloading and consequent dangerous condition of the boat, subsequently not only started it on its perilous trip, but, after starting, and while it was yet in smooth water, and after observing that it was down by the head, and with but little freeboard, made no effort whatever to return to the shore to make the boat safe by discharging some of the passengers. It was the clear duty of the officer, in the first place, to have stopped the entry of more than the boat's complement of men. According to his own testimony, he made

nothing more than a milk and water protest against the entry of any one; and even if there had been on the part of the passengers an effort to overpower the officer and force their way into the boat—of which there is not the slightest evidence—it still remained the imperative duty of the officer in command to refuse to start the boat until enough of the people had gotten out to make it safe. Not the slightest attempt appears to have been made by this officer to perform his duty in that regard, and for his gross negligence in that respect, as well as in failing to return to shore while he yet had sufficient opportunity, the ship is clearly liable, for, even where an injured party is guilty of contributory negligence, such negligence will not defeat the action when it is shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Louisville & Nashville Ry. Co. v. East Tennessee, V. & G. Ry. Co., 60 Fed. 993, 9 C. C. A. 314; Harrington v. Los Angeles Ry. Co. (1903, Cal.) 74 Pac. 15.

This doctrine, which is well established, fits the present case exactly. The case of Lynn v. Southern Pacific Co., 103 Cal. 7, 36 Pac. 1018, 24 L. R. A. 710, is, in principle, also precisely in point. In that case the plaintiff passenger was unable to find room inside a car, and therefore stood upon the platform, from which he was thrown and injured; the evidence tending to show that the train was going at excessive speed. In affirming a judgment for the plaintiff, the Supreme Court of California said:

"The defendant should not have allowed so many passengers to have gone upon its cars, and, if it was unable to prevent them from so doing, it had the right to refuse to move the train under such circumstances; but, if it did not pursue that course, and undertook to transport all passengers that were on board, whether within the cars or upon the platforms, it was under obligation to exercise the additional care commensurate with the perils and dangers surrounding the passengers by reason of the overcrowded condition of the cars."

So, here, as has already been said, if the officer in command of the boat had been unable to prevent its overloading (of which, however, there was no evidence), it was still his right and imperative duty to refuse to start the boat until enough of the passengers had gotten out to make it safe to do so. There is nothing in the record to justify the contention that such action on his part would not have been acquiesced in and conformed to. But speculation on that point is no answer to the gross neglect of duty on the part of the officer of the ship.

Moreover, the evidence shows that the negligence of the officer in command of the boat was committed in the personal presence and within the actual knowledge of the president of the appellee corporation, who, so far from seeking to enforce the performance of his duty by that officer, acquiesced in his neglect of duty, as affirmatively appears from the president's own testimony.

The limitation of liability provided for by the statute under which the present proceedings were had is, according to its express terms, to be allowed only when the loss, damage, or injury occurs "without the privity or knowledge" of the owner. In the case of The Republic, 61 Fed. 109, 9 C. C. A. 386, the privity or knowledge of the corporation consisted in the negligence of its president, who, by his omission of

proper care in his examination of the vessel, failed to discover her defective condition; and the Circuit Court of Appeals for the Second Circuit there held that the injuries and death occasioned to the excursionist in that case could not be said to have occurred "without the privity or knowledge" of the owner. We think that decision directly in point here. "Privity and knowledge," said Judge Brown in The Colima (D. C.) 82 Fed. 665, "are chargeable upon a corporation, when brought home to its principal officers or the superintendent, who is its representative." See, also, Quinlan v. Pew, 56 Fed. 111, 5 C. C. A. 438; Lord v. Goodall, etc., S. S. Co., 4 Sawy. 292, Fed. Cas. No. 8,506.

The judgment is reversed and cause remanded, with directions to the court below to dismiss the petition at petitioner's cost, leaving the administratrix of the estate of the deceased, Weisshaar, at liberty to pursue her action for damages in the state court.