# DECISIONS

OF THE

# Supreme Court of Florida

## JANUARY TERM, 1913.

FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error,* v. H. W. HAYES, *Defendant in Error.*

## Opinion Filed January 15, 1913.

Where on writ of error two of the five members of the court are of the opinion that the judgment should be affirmed, while two members are of opinion that the judgment is excessive in amount and the other member is of opinion that the statute upon which the judgment in large parts rests is unconstitutional, the judgment will be reversed.

Writ of error to the Circuit Court for Duval County.

Judgment reversed.

*Alex. St. Clair-Abrams* for Plaintiff in Error;

*A. H. King,* for Defendant in Error.

WHITFIELD, J.—Hayes recovered a judgment for $25,000.00 damages for the death of his 13 year old son, caused by one of the defendant railroad company's trains, and the defendant took writ of error.

The right of a father under Section 3147 of the General

Statutes of 1906, to recover damages for his loss of service and his mental pain and suffering because of the death of his minor child caused by the wrongful act, negligence, carelessness or default of a defendant corporation has been sustained in the case of Davis v. Florida Power Co., decided at the last term. This case presents the question whether the father can under the statute also recover damages for the mental pain and suffering of the mother caused by the wrongful or negligent death of their minor child. The question of excessiveness in the amount of the judgment is also presented. The declaration states a cause of action and an affirmative charge for the defendant was properly refused.

Section 3147 of the General Statutes is as follows: "Whenever the death of any minor child shall be caused by the wrongful act, negligence, carelessness or default of any private association of persons, or by the wrongful act, negligence, carelessness or default of any officer, agent or employee, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, negligence, carelessness or default, of any officer, agent or employee of any corporation acting in his capacity as such officer, agent or employee, the father of such minor child, or if the father be not living, the mother, as the legal representative of such deceased minor child, may maintain an action aginst such individual, private association of persons or corporation, and may recover not only for the loss of service of such minor child, but in addition thereto such sum for the mental pain and suffering of the parent or parents as the jury may assess."

If the words "or parents" contained in Section 3147 of the General Statutes of 1906, are in effect designed to allow the father to recover damages for the mental

pain and suffering of the mother caused by the wrongful death of their minor child, such words are repugnant to other provisions of the same Section giving the mother a right of action only if the father be not living, and authorizing the father if living to maintain the action "as the legal representative of such deceased minor child." The right of action given to the father has no real or legal relation to the mental pain and suffering of the mother. A recovery by the father for the mother's mental pain and suffering, is contrary to the general principle of law that one person cannot recover for injury to another unless a representative relation exists between them. The father sustains no loss or injury recognized by law for the mother's mental pain and suffering that may be redressed in damages, even where their status as husband and wife has not been impaired by death or by the law; and under the statute or other law the father does not represent the mother in maintaining the action. The provision for a recovery by the father in his personal capacity or as the legal representative of the deceased minor child, of damages for the mother's mental pain and suffering appears to be an arbitrary exercise of governmental power that may amount to a denial to the defendant of due process and equal protection of the laws in violation of organic provisions.

Even if under Section 3147 the father may constitutionally recover damages in this action for the mental pain and suffering of the mother caused by the wrongful death of their minor child, the verdict and judgment in this case are upon the evidence clearly excessive.

In this case there is no evidence of a malicious or intentional injury to the decedent or of negligence of "so gross and flagrant a character as to evince reckless disregard of human life, or of the safety of those exposed to

its dangerous effects, or that entire want of care which would raise the presumption of a serious indifference to consequences, or show wantonness and recklessness, or reckless indifference to the rights of others, equivalent to an intentional violation of them, which is necessary to justify a jury in inflicting punative damages." Florida Cent. & P. R. Co. v. Mooney, 40 Fla. 17, 24 South. Rep. 148; Florida Southern Ry. Co. v. Hirst, 30 Fla. 1, 11 South. Rep. 506; Florida Ry. & Nav. Co. v. Webster, 25 Fla. 394, 5 South. Rep. 714; Dowling Lumber Co. v. King, 62 Fla. 151, 57 South. Rep. 337; Florida East Coast R. R. Co. v. Schumacher, 63 Fla. 137, 57 South. Rep. 603.

There is perhaps as much evidence that the defendant exercised all ordinary and reasonable care and diligence as required by the statute, and that the decedent was accustomed to traveling on a train and actually jumped off the moving train onto the station platform before the train stopped which caused his death, as there is evidence that the deceased was thrown from the steps of the car by a sudden jar of the train. If the decedent and the defendant were both at fault the damages should be diminished as required by the statute.

Of course no amount of money that could be recovered would compensate a parent for the wrongful death of a child; but after the death the legal problem under the statute is the proper compensatory liability to impose for the wrongful or negligent act that caused the death of the minor child.

The death of a child deprives the parent of its society and of the hope for its future life, which while the child lives afford comfort and inspiration to the parent; and deprivation of such society, comfort and inspiration is a substantial injury that naturally causes mental pain

and suffering for which damages in a proper amount may be recovered, under the statute.

As was held in the case of Florida East Coast Ry. Co. v. Geiger, decided at the last term, the motion of the defendant below "to set aside the verdict rendered in this cause" was in effect a motion for a new trial, and it was so treated by the trial court. Counsel for the plaintiff below was not present when the motion was submitted to the trial court, but two affidavits state that the right to be present was waived by counsel, and the denial of the defendant's motion in the absence of plaintiff's counsel could not injure the plaintiff.

Mr. Chief Justice SHACKLEFORD, concurs in a reversal of the judgment upon the ground that Section 3147 of the General Statutes under which the greater portion of the damages was found, is unconstitutional for the reasons stated in his dissenting opinion in the cases of Pensacola Electric Co. v. Soderling, 60 Fla. 164, 53 South. Rep. 722, and Davis v. Florida Power Co., decided at the last term.

The judgment is reversed.

TAYLOR, J., concurs.

COCKRELL, J., dissenting.

Mr. Justice HOCKER, and the writer are unable to agree to the reversal of this judgment.

The declaration alleges and there is sustaining evidence to support its allegations, that the boy took passage on a rear coach of the train in Jacksonville as it was about to leave for Pablo; that he was ordered out of that coach by an employee of the company because the coach was to be taken off; that he went into another coach which

became the rear coach, as the last three were cut off; that he went through the train attempting to find a seat in the coaches, but found not only that there was no seat but that the aisles themselves were crowded and he found a seat on the step of the platform that was also filled with passengers.  While so seated the conductor took up his ticket without any warning of the danger.  By pressure from behind he was forced to stand holding on to a supporting iron rod; and that by a sudden and unusual jarring of the train just as it was reaching the station at Pablo he was thrown from the car, dragged under the train and his life crushed out. We are not now concerned with the conflicting evidence to the contrary; these conflicts having been settled by the jury's verdict.

Upon these facts the liability of the company is shown. Even in those States where contributory negligence is a complete defense and not a partial one as in this State in this class of cases, the modern trend of authority upholds the right of action.   Lynn v. Southern Pacific Co., 103 Cal. 7, 36 Pac. Rep. 1018, 24 L. R. A. 710; Graham v. McNeill, 20 Wash. 466, 55 Pac. Rep. 631, 43 L. R. A. 300; Chicago & A. R. Co. v. Dumser, 161 Ill. 190, 43 N. E. Rep. 698; Norvell v. Kanawha & M. R. Co., 67 W. Va. 467, 68 S. E. Rep. 288; Chesapeake & O. Ry. Co. v. Lang's Adm'r., 100 Ky. 221, 38 S. W. Rep. 503; 40 S. W. Rep. 451; 41 S. W. Rep. 271; Trumbull v. Erickson, 97 Fed. Rep. 891; Olivier v. Louisville & N. R. Co., 43 La. Ann. 804, 9 South. Rep. 431; Yazoo & M. V. R. Co. v. Byrd, 89 Miss. 308, 42 South. Rep. 286.  The cases of Worthington v. Central Vt. R. Co., 64 Vt. 107, 23 Atl. Rep. 590, and Camden & Atlantic R. R. Co. v. Hoosey, 99 Pa. St. 492, cited to us by plaintiff in error look the other way, but we cannot follow them to the extent of holding that

mere physical ability to find standing room within a coach imputes as matter of law such negligence as to bar recovery, when the passenger is a boy who might be crushed or smothered on the warm day by the overcowding of adult passengers, and who is knowingly accepted as a passenger with others while seated on the steps of the platform, pertinent facts not involved in those cases.

Is it due process of law to permit a father suing for the negligent killing of his son to recover for the mental pain and suffering of the mother, in addition to his own? The statute clearly permits such recovery, and for the first time in this court is the power of the legislature questioned.

In approaching a solution we must bear in mind that the mother, independent of the statute, has no right of recovery and that this unusual provision for recovery of damages is based upon the biblical injunction, "they twain shall be one flesh" and the headship of the husband in that relation. The first thought prevents the idea that the mother is deprived of any right or that the defendant might be in danger of an action by her for the injury done. The existence of the husband and father precludes any possible action by her.

No precise definition has been given to the term "due process of law," but at least this plaintiff in error has had its day in court upon a sufficient declaration and with every opportunity to present its defense, followed by a judgment the payment of which is its ample protection. There is, it is true, an unusual element of damage presented, which is not however wholly disconnected with the injury inflicted by the negligent act. The mental

pain and suffering of the wife and mother of necessity acts and reacts upon the husband and father; the recovery by the husband and father, as the legal representative of the deceased minor child, whatever that may mean, redounds measurably to the benefit of the wife and mother.

The damages allowed by the statute bear some relation to smart money, and also may be referred in a general way to the head of police power. Just such state of facts as is shown in evidence here, the negligent overcrowding of excursion trains, may have produced in the legislative mind the necessity for more drastic measures than the law then afforded.

While the legislation might, in our judgment, be more wise, if it gave a definite measure for the damages to be allowed, our power to pass upon the wisdom of that branch of our government, comes into play only when the unwisdom can be planted squarely upon some specific inhibition of the State or Federal Constitution, and this we cannot find.

The constitutionality of the statute generally has been but recently upheld by this court in a case cited in the opinion prepared by Mr. Justice WHITFIELD, and we do not care to add to the views therein expressed.

The damages awarded appear large, but can we interfere?

In the Geiger case recently decided where the form of the motion is identical with this, the parties were both before the court on the argument and the motion was treated by all as a motion for a new trial. In the instant case, the minute entry shows that Hayes was not repre-

sented at the hearing, and there is nothing in the order by recitation or inference that he waived any rights to notice or to a hearing. There are some ex parte affidavits copied into the transcripts to the effect that counsel was notified by telephone and waived any desire to be heard, but we have provided by rules which have the effect of a statute law, how notice of these hearings may be made, and also that agreements between counsel shall be binding only when in writing. As the movant is not aided by anything said by the court, it was incumbent upon it to show a service or waiver as required by the rule and this it has signally failed to do. The motion, as a motion for a new trial, was not properly before the Circuit Court for consideration, and its denial does not therefore, in our opinion, properly present to this court the question of the excessiveness of the verdict. See Dupuis v. Thompson, 16 Fla. 69. Should we be in error, however, as to this point of practice, we would still refuse to interfere with he verdict which has met the approval of the trial court. We know of no safe guide whereby to justify an interference by us. The verdict is undoubtedly large, but the loss was also a severe one, and it can be estimated as exactly by a jury and trial court as it can be by us, who are circumscribed by the Constitution to strictly appellate supervisions. There is no possible connection or definite ratio between the money loss and the mental agony, and if we are to interfere we ask for some yard stick whereby to measure. The vast number of judgments in the reported cases for physical injuries form some guide to the courts now, and have established as it were a common law upon that subject, but for the mental anguish of a parent for the blotting out of the life of a beloved child, the reported cases furnish no light.