NICK MISLEH v. STATE

187 So. 388.
Division A.
Opinion Filed April 18, 1939.
Rehearing Denied May 18, 1939.

*Pine & Giblin, Vincent C. Giblin* and *Louis M. Jepeway,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *H. E. Carter, Thomas J. Ellis,* Assistant Attorneys General, for the State.

BUFORD, J.—The plaintiff in error was convicted of murder in the second degree and sued out writ of error.

Several questions are presented by brief, but, because of the paucity of evidence tending to indicate guilt of the accused, we shall only advert to the insufficiency of the evidence.

There is no evidence in the record from which the jury might have concluded with any degree of certainty that the accused, or any other person, inflicted any mortal wound or hurt upon the deceased.

There is some evidence in the record that the accused did strike the deceased a blow with his hand or fist a short

time before deceased died. But there is no evidence that death resulted therefrom and the evidence is not convincing that the accused was actually the person who had an altercation with deceased shortly before the death.

At most, the evidence is sufficient only to raise a bare suspicion that the defendant may have been responsible for the death of deceased.

So the judgment is reversed.

So ordered.

BROWN and THOMAS, J. J., concur.

WHITFIELD and CHAPMAN, J. J., dissent.

TERRELL, C. J., not participating.

CHAPMAN, J. (dissenting).—The plaintiff in error, Nick Misleh, was indicted by a grand jury of Dade County, Florida, for murder in the first degree for the death of Fred J. Pratt on the 1st lay of September, 1936. He was placed upon trial and convicted of murder in the second degree and sentenced to the State Prison for a period of twenty years. He sued out a writ of error and seeks a review by this Court of the trial, conviction and sentence entered against him by the Circuit Court of Dade County, Florida.

One of the questions raised by counsel in his behalf is that the evidence offered by the prosecution is insufficient to sustain the verdict of the jury and the judgment thereon. The evidence showed the deceased, Fred J. Pratt, to be 64 years of age and that on the night of August 31, 1936, he was around a beer saloon at 7th Avenue and 9th Street in the City of Miami and drank several glasses of beer, and at midnight, when the saloon closed, he went to his coupe automobile parked on 9th street near the saloon, and there is a suggestion that the deceased had a habit of sleeping in his car. The deceased was killed near where his car was

parked between 2:15 and 2:30 A. M. on September 1, 1936.

The evidence shows that the defendant by birth is an Assyrian and has lived in America since he was six months old and at the time of the homicide he was 25 years of age and that he was married and had a child, and that his mother lived with him in a house described by the witnesses as being located about six or eight blocks from the *locus in quo*. The witness McCarthy testified it would require 5½ minutes to walk from where the defendant lived to the scene of the homicide. The defendant was arrested at his home by the police officers of the City of Miami between 2:00 and 3:00 o'clock A. M. on September 1, 1936, and that at the time the officer went into his bedroom, the defendant feigned to be asleep but the officer testified that he had not been asleep but wanted to impress the officer with the fact that he had been asleep and had been drinking.

On the evening of the homicide the defendant, with two companions, attended a prize fight in the City of Miami and returned therefrom after 11:00 o'clock, when he visited drinking places in the vicinity where the homicide later was committed. He went with two others and a "U Drive It" car was obtained and the three rode around the city and his two companions let him out of the car in almost one block of his home shortly before 2:10 A. M., and they testified he was drinking and protested against going home or getting out of the car as he wanted to stay with his friends or go back to the drink stands.

Counsel for the defendant contended at the trial that when the crime was committed defendant was at home after 11:30 P. M. with his family until arrested, and the defendant and his mother and wife so testified, but this evidence was contradicted by other witnesses in his behalf

who were with him until he left the "U Drive It" car at a point near one block of his home at about 2:10 A. M., when the deceased was killed between 2:15 and 2:24 A. M., as a police officer testified as to the exact time when information of the crime was telephoned to the police station. Mrs. Florence King testified that she lived close to where the crime was committed and at around 2:00 o'clock A. M. she heard a noise like "some one knocking against something," and shortly thereafter heard a man say, "Go away and leave me alone or I will holler," and this statement occurred 20 minutes past 2:00 and the man screamed out in agony like he was hurt. Harry L. Littlejohn, by trade a carpenter, lived near the scene of the crime and had been asleep and when awakened he heard some one say, "Go away and let me alone," and looking out of his window saw two men standing opposite each other and the man struck Pratt on the chin and knocked him down and the man ran south on 7th Avenue. It was a moon light night and while he did not see the face of the man running from the scene, he observed he was wearing a white undershirt and dark trousers, and was about 5 feet 9 inches in height and weighed 165 or 170 pounds, and that the defendant on trial was not the man. Mrs. Littlejohn testified to about the same thing as her husband.

Thomas C. Hutchinson testified for the State that he saw the defendant around 2:15 stooping down over the deceased and ran away south on 8th street around a filling station when the witness approached the scene and he followed him from the filling station into another street when he lost sight of the defendant. He was from 5 to 75 feet of him when he was under a street light and had known the defendant for 10 years and had attended school with him and positively identified him as the man stooping over the deceased; that the defendant was wearing a dark shirt and

dark trousers when the homicide was committed; and that he, Hutchinson, was driving a car at the time and in the car with him were Georgia Roberts and Idella Cook. The witness assisted in getting an ambulance when the deceased was taken to a hospital and found to be dead, and thence to a funeral home. The witness, Idella Cook, moved to California and her testimony was not available, but Georgia Roberts corroborated all that was said by the witness Hutchinson, with whom she and Idella Cook were riding, but would not identify the defendant as the person striking the deceased and stooping over him when they approached; she admitted that she did not have a chance to clearly see him, but thought the color of the defendant's hair was different from that of the person whom she saw leave the scene. On cross examination she stated that she would not swear that the defendant was the person who made the attack and who ran from the scene.

Virgin Green testified for the State that on leaving his work passed the scene and heard an argument between the deceased and the defendant, and positively identified him as the man then on trial: "I just heard them arguing in there, and then the printer (deceased) came out from between the two houses and this fellow came out and struck him," and the defendant turned to me and said, 'You get going or I will get you," and that the car driven by Hutchinson came up and the defendant ran. On cross examination this witness stated that the defendant, about two weeks prior to the homicide, black jacked him on the 5th Street bridge, and that the defendant "struck Pratt over the head and hit him in the back of the head from the back."

It is next contended that if the defendant was guilty of striking the deceased it has not been shown that the blows were sufficient to produce or cause death. The police officer McCarthy testified that he saw the body of the

deceased at a funeral home and examined it; that there was a nail hole about one inch from the eye brow, a black and blue mark on his chest, a V. shaped wound on the back of his head and his right eye was black or discolored. The witness Noe testified that he saw the deceased lying in the street with his head about 6 or 7 inches from the gutter and later examined the wounds of his body and that "the deceased had several little cuts on his head and several bruises on his face and forehead." The witness Gaulding testified that he paid the admission fee for the defendant to see the prize fight, and defendant said, "I will give you my part back later on, or the first thing in the morning, I haven't got any money with me," and that defendant had his shoes shined the night of the homicide and asked one of his companions to pay for it as he had no money.

The record shows that the defendant had been convicted of a juvenile delinquency, and had entered a plea of guilty to a charge of breaking and entering, and had about two weeks prior to the homicide used a black jack on the witness Virgin Green at the bridge on 5th Street in an effort to rob him. The witness saw the defendant stooped over the body of the deceased as it lay in the street and was frightened from the scene when the car in which Hutchinson and the girls were riding approached.

It is contended here that there is no evidence in the record to show that the wounds, bruises and contusions appearing on the head and body of the deceased were sufficient to produce or cause the death of Fred J. Pratt, and the case of Edwards v. State, 39 Fla. 753, 23 So. 537, is cited.

The evidence shows that counsel for the State and defense proceeded in the trial of the case in the lower court upon the theory that Fred J. Pratt was dead. Witnesses Hutchinson and Green testified as to the blows delivered

by the defendant on the head and body of the deceased and as a result of the blows the deceased fell to the pavement and died. The wounds on the head and body of the deceased were described by the different witnesses. We fail to find merit in the contention that the State failed to adduce sufficient evidence showing the death of the deceased. See Dieterle v. State, 101 Fla. 79, 134 So. 42; Lee v. State, 96 Fla. 59, 117 So. 699; Jones v. State, 65 Fla. 1, 61 So. 185; Baker v. State, 30 Fla. 41, 11 So. 492. Wharton's Criminal Evidence, Vol. 2, (11th Ed.) pages 1503-8, pars. 871-2, answers adversely the contentions of counsel on this point when it says:

"871.—Proof of Death in Prosecutions for Homicide. The first element of the *corpus delicti* in homicide, namely, death, should be distinctly proved either by inspection of the body, or by other evidence strong enough to leave no ground for reasonable doubt. According to the common law rule, proof of death must be by direct evidence. Several of the states have passed statutes providing that no person can be convicted of any grade of homicide unless the death of the person alleged to have been killed is established as an independent fact by direct proof, and the criminal agency of the accused is established as an independent fact beyond a reasonable doubt. Under the common law rule, the requirement is fully satisfied when the death is shown by witnesses who were present when the murderous act was done, or by the production of the dead body, and if both parties assumed at the trial that the person alleged to have been killed is dead, direct proof is not necessary. Where the body is found and identified, death is conclusively established * * *.

"872.—Proof of Criminal Agency in Prosecutions for Homicide. * * * It must affirmatively appear that death resulted from criminal agency. The general rule in homi-

cide is that the criminal agency—the cause of the death, the second element of the *corpus delicti*—may always be shown by circumstantial evidence. Criminal agency is sufficiently shown where a dead body is found with injuries apparently sufficient to cause death, under circumstances which exclude inference of accident or suicide; or in such a place as it could not probably get without human agency; or with evidence of an effort to destroy the body or its identity. Criminal agency is established by proof of wounds which shortly afterwards were followed by death; or by the infliction of mortal wounds which were followed by death; or, in case of a woman, by evidences of strangulation, particularly after violation of her person; or by the fact that a person in previous health was so seriously wounded that death shortly followed * * *."

Consideration has been given to the order of the lower court sustaining a demurrer to the plea in abatement filed by the defendant setting up a failure to observe the provisions of Section 4444 C. G. L., and articularly the duty of the Board of County Commissioners to verify the list of the jurors. We fail to find merit in this assignment.

The third question posited by counsel for the plaintiff in error is, viz: "Where by an indictment it was charged that the accused 'unlawfully and from a premeditated design to effect the death of Fred J. Pratt, did kill and murder him, the said Fred J. Pratt, by assaulting, beating and striking him, the said Fred J. Pratt, with a blunt instrument,' and at the trial of the accused, on such indictment, no evidence whatever was adduced which proved or showed, or tended to prove or show, that the accused (or any other person) assaulted, beat or struck the deceased with a blunt instrument, or any other instrument, and no evidence whatever was adduced which proved or showed, or tended to prove or show, that the death of the deceased was caused

by, or resulted from, his having been assaulted, beaten or struck by the accused (or any other person) with a blunt instrument, or any other instrument, was the accused lawfully and properly convicted, on such indictment, or murder in the second degree?"

We are unable to agree with counsel that no evidence was adduced or facts established or shown by the State that the deceased was beaten *with a blunt instrument.* The wounds, bruises and contusions appearing on the head and body of the deceased as inflicted by the defendant is a complete answer to this contention. This Court has repeatedly held that where there is any substantial evidence to support a verdict, the same will be upheld, unless it may ·be assumed that the jury was improperly influenced by considerations outside the evidence. See Kirkland v. State, 93 Fla. 172, 111 So. 351; Howell v. State, 102 Fla. 612, 136 So. 456.

We have carefully considered each contention of counsel for plaintiff in error and hold that there is no error in the record.

The judgment appealed from is affirmed.