AMON H. RUSS v. STATE

191 So. 296
Division B
Opinion Filed October 6, 1939

*B. L. Solomon* and *Carter & Pierce,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—Plaintiff in error, Amon H. Russ, was informed against by the State Attorney of Jackson County, Florida, for the crime of manslaughter. The information alleged that he negligently operated an automobile so as to collide with Gussie M. Wells and thereby inflicting upon her a mortal wound. The defendant entered a plea of not

guilty upon arraignment and a jury was called and the issues submitted under appropriate instructions from the trial court, but the jury was unable to agree upon a verdict and a mistrial was declared.

The issues, at a subsequent date, were submitted to a second jury who, after hearing all the evidence, argument of counsel and charge of the court upon the law of the case, returned a verdict of guilty as charged in the information. The trial court overruled and denied defendant's motion for a new trial and sentenced the defendant to serve a period of three years at hard labor in the State Prison. Writ of error was taken and the case is here for review solely upon the question of the sufficiency of the evidence to sustain the verdict.

The information was drafted under Section 7141 C. G. L., viz.:

"The killing of a human being by the act, procurement, or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this Article, shall be deemed manslaughter, and shall be punished by imprisonment in the State prison not exceeding twenty years, or imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousaid dollars."

The killing of a human being by culpable negligence by the statute, *supra,* is made manslaughter. Culpable negligence is the omission to do something which a reasonable, prudent and cautious man would do, or the doing of something which such a man would not do under the circumstances surrounding the particular case. Negligence is the failure to observe for the protection of another's interest such care, precaution and vigilance as the circumstances justly demand whereby injury is done to such a person, or, in another form, negligence is the failure to do what a

reasonable and prudent person would ordinarily have done, or the doing of what such a person would have done under the situation whereby injury is done to another. See Franklin v. State, 120 Fla. 686, 163 So. 55. The burden of proving culpable negligence rests upon the State of Florida like any other material allegation of an indictment. See Pitts v. State, 132 Fla. 812, 182 So. 234.

This Court is committed to the rule that the degree of negligence required to sustain imprisonment should be at least as high as that required for the imposition of punitive damages in a civil action. The burden of proof authorizing a recovery of exemplary or punitive damages by a plaintiff for negligence must show a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, *which is equivalent to an intentional violation of them.* See Cannon v. State, 91 Fla. 214, 107 So. 360; Shaw v. State, 88 Fla. 320, 102 So. 550; Kent v. State, 53 Fla. 51, 43 So. 773; Florida East Coast R. Co. v. Hayes, 65 Fla. 1, 60 So. 792.

This Court adopted the rule, viz.: that the character of negligence authorizing punitive damages is the same as the character of negligence required to be shown by the State in order to sustain a conviction under Section 7141 C. G. L., as to criminal liability. See Cannon v. State, *supra;* Austin v. State, 101 Fla. 990, 132 So. 491.

The deceased, with her husband, for many years lived adjoining and on the north side of highway No. 1, east of Marianna, but within the incorporate limits of the city. Heavy traffic passed continuously over the highway and no

obstruction of the view of the highway existed so as to prevent a person from seeing the approach of cars from the west at the point where deceased lived. On the south side of the highway opposite but some distance east of the home of the deceased a Mr. Stewart maintained a grocery store. The deceased, about dusk or a little after on the evening of April 11, 1938, left her home on the north side of the highway for the purpose of getting some milk at the Stewart store to be used in connection with the evening meal. She was 58 years of age and weighed about 150 pounds, of stocky build, and had a habit of walking fast when attending to her household duties. When engaged in crossing the highway she was struck by the car driven by the defendant while traveling east on the highway. Her body was found lying on the center mark of the highway. Her skull was broken above the right ear and the break extended forward to include her forehead and right eye. She had wounds and bruises on her right arm and lower right limb, and all the wounds inflicted were on the right side of her body, and death was instantaneous. The car had attached thereto a spot light fastened on the windshield and was between four and five feet from the ground, and it was generally admitted by all the witnesses that the spot light situated on the left side of the 1936 Ford coupe struck the deceased on the head when she was crossing the highway and that the blow caused her death.

The defendant, and R. W. Spivey and F. V. Strickland, occupants of the car at the time of the accident, were employed by the McCaskill Motor Company in the City of Marianna, and after the completion of the day's work, around 7:00 o'clock P. M., on April 11, 1938, went for a ride in the defendant's 1936 Ford coupe, with the defendant driving. They proceeded east from Marianna on Highway No. 1 and observed the deceased in a run crossing

the highway from her home in the direction of the Stewart store and she was then about 20 feet from the car when the defendant turned his car to the right, thereby placing the right car wheels of the car off the highway about five or six feet, and the deceased continued her course of direction in a run when the car struck her at a place on the highway south of the center thereof. There is a conflict in the evidence as to the exact distance south of the center of the highway where deceased was struck, but blood marked the spot as well as the place where she was later found. The defendant continued his course east with the right wheels of his car off the highway, striking mail boxes near the pavement before stopping, when defendant returned to the scene of the accident and rendered all possible assistance.

The witnesses examined the place where the car left the highway as shown by the marks thereon, and agreed that the point was approximately 20 feet west of the point where the deceased collided with the car. There is not much testimony in the record as to the mechanical condition of the car at the time of the accident. The gravamen of the charge here is that the car at the time of the accident was being driven at an excessive rate of speed. The evidence is conflicting as to the rate of speed traveled at the time of the accident, but is by the witnesses placed at from 25 to 60 miles per hour. The occupants of the car placed it from 25 to 35 miles; one or two witnesses near the scene of the accident estimated it to be from 40 to 50 miles, and others between 50 to 60. It is argued by the State that the excessive rate of speed at the time of the accident is fully established by the distance the car traveled before stopping after the collision. The defendant testified that he swerved the car to the right side of the highway to avoid the accident when he saw the deceased traveling in a run in the front of

the car on the south side of the center of the highway, and this hasty turn of the car off the highway made it difficult to bring the car to a stop. The wounds of the deceased were on the right side of her head and body and the car had marks on the left side. The deceased had made her home on the highway for many years and had a knowledge of the volume of traffic at the point where the accident occurred. The lights on the car were burning at the time of the accident.

If a civil action was brought against the defendant for the alleged wrongful death of Mrs. Wells and punitive or exemplary damages sought, the proof must be of a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or a gross careless disregard of the safety and welfare of the public, or a reckless in difference to the rights of others, which is equivalent to an intentional violation of them. See Cannon v. State, *supra*.

The same proof is required on the part of the State before a conviction can be upheld in the case at bar under Section 7141 C. G. L. We fail to find evidence adduced by the State of Florida in the lower court sufficient to meet the requirements of the rule enunciated in Cannon v. State, *supra*. The State contended that the excessive rate of speed of the car at the time of the collision was sufficient to bring the case within the rule. We cannot agree to this contention in the light of all the evidence in the record.

The deceased for many years made her home near the place where the accident occurred, had a knowledge of the traffic on the highway at all times at the point where she attempted to cross; there were no obstructions to prevent her seeing the approach of the car; the collision occurred on the

south side of the center of the pavement where the defendant had a lawful right to travel, and the deceased when crossing the highway was charged with the exercise of such care as was necessary for her own self preservation.

The courts of Florida, under Section 4 of the Declaration of Rights of the Constitution, are charged with the responsibility of administering justice, and after a careful consideration of the entire record, a study of the briefs of counsel and authorities cited, and after hearing oral argument at the bar of this Corut, we cannot say that justice has prevailed in the lower corut.

The judgment appealed fiom is hereby reversed and a new trial awarded.

WHITFIELD, P. J., and BUFORD, J., concur.

BROWN, J., concurs in conclusion.

TERRELL, C. J., concurs in opinion and judgment.

BUFORD and THOMAS, J. J., not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.