## EMILY CORNELL and EMILY DYER, v. STATE OF FLORIDA

32 So. (2nd) 610                                June Term, 1947
November 18, 1947                              Division A

*Tilman & McEwen* and *James M. McEwen,* for appellants.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, and *Rebecca Bowles Marks,* Special Assistant Attorney General, for appellee.

SEBRING, J.:

The appellants were found and adjudged to be guilty of manslaughter, and sentence was imposed. They have taken an appeal from the judgment and sentence, and question the sufficiency of the evidence to sustain the charge of guilt.

The count of the information upon which the appellants were found guilty charges, in effect, that on January 7, 1947, Emily Cornell had the actual and physical care, custody and control of an infant child of the age of 2½ months and was under the legal duty to give said child the necessary care and attention to protect it from harm; that, nevertheless, while

intoxicated from the voluntary use of intoxicating beverages, Emily Cornell did, through her own act, procurement, and culpable negligence, unlawfully neglect and omit to provide such care and attention, in that she did negligently and carelessly place said infant child in an adult bed with her, and covered the body and face of the child with bed covers, all in a careless and negligent manner, as a result whereof the child suffocated and died.

The same count charges that Emily Dyer, the mother of the infant child, by her own act, procurement and culpable negligence, did unlawfully and feloniously counsel and procure the said Emily Cornell to do and commit the said felony charged.

The defendants did not offer any evidence in the case. The material evidence of the State upon which the jury found its verdict may be briefly stated as follows:

Emily Cornell is the mother of Emily Dyer. Emily Dyer was the mother of the deceased child. The appellants lived in a trailer located in a trailer park at Tampa. About 11:00 or 12:00 o'clock on the night before the death of the infant, Emily Dyer and her mother drove to the Grand Oregon Bar, taking the child with them. They got out of the car, took a drink of whiskey out of a bottle and went into the bar, leaving the infant in the car. There was testimony that approximately 3 hours prior to that time each of the parties had been seen taking at least one drink, but it was not shown that they had become intoxicated as a result. The record is silent as to whether more drinks were taken before the parties arrived at the bar.

Emily Dyer and her mother Emily Cornell, stayed at the bar dancing and talking to people until sometime after midnight. During that period of time they each had two or three drinks; and while no one would say that the parties were drunk, one witness testified that the appellant, Emily Dyer, was "high."

Emily Dyer met some friends at the bar around 2:00 or 2:30 in the morning. She left the baby in the grandmother's care and went with her friends on a party. She returned to her trailer quarters some 16 hours later, and found that her

baby had died during the intervening period. There is no evidence as to when Emily Cornell left the bar; there is evidence that she stated to an investigating officer after her arrest that she was too drunk to remember leaving the bar, and that her first conscious period was at about 10:00 o'clock the following morning, at which time she awakened in her three-quarter bed in the trailer and found the dead body of the infant child lying beside her.

The testimony given by several neighbors of the appellants is to the effect that the child was heard crying loudly around 6.30 in the morning and that the crying continued until approximately 9:30 or 10:00, at which time the crying subsided. As narrated by one of the witnesses: "He cried like he was losing his breath, then he would start again; just like they put their hand over his mouth." Another witness gave her version of the crying as follows: "Well, it cried continuously like, you know, it just probably wanted attention, or something; but it finally just got where I couldn't hear it at all, just cried until it was just distantly crying, like, very low."

An autopsy was performed by a competent physician, who diagnosed the cause of death as "suffocation."

Based upon this evidence, the jury found the appellants guilty of manslaughter; the grandmother, Emily Cornell, as a principal, and the mother, Emily Dyer, as an accessory before the fact.

We are unable to find any evidence in the record to sustain a finding of guilt as to the mother of the child, Emily Dyer. It is true that at the time Emily Dyer delivered the child to her mother for safekeeping, both of the parties had had several drinks of intoxicating liquor, but there is no proof that either of the defendants were in such an intoxicated condition as not to be in full possession of their normal faculties, or to appreciate the full consequences of their acts. Neither is there anything in the record to show that when the mother left the child with the grandmother she, the mother, knew or had reasonable cause to apprehend that the life of the child might thus be endangered.

With reference to the appellant, Emily Cornell, however, a different situation prevails.

Section 782.07, Florida Statutes 1941, provides that: "The killing of a human being by the . . . culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder . . . shall be deemed manslaughter . . . " Culpable negligence, as used in the statute, means negligence of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them." See Cannon v. State, 91 Fla. 214, 107 So. 360; Russ v. State, 140 Fla. 217, 191 So. 296.

As appears from the record, Emily Cornell was apparently in full possession of her normal faculties at the time she received the physical custody of the child from its mother, Emily Dyer—at least there is no evidence to the contrary. Subsequently, she became so intoxicated that she did not remember leaving the bar, arriving at the trailer, or going to bed with the infant child beside her.

If this evidence is to be given its appropriate weight, the conclusion seems inescapable that, after the grandmother had voluntarily accepted the custody of the helpless infant from its mother, and had thus placed herself under the duty of giving it proper care and treatment until the mother's return, she proceeded recklessly and willfully to drink herself into such a drunken stupor that not only did she render herself totally incapable of looking after the infant but actually became wholly oblivious to the fact that she had it in her possession at all.

From this evidence, and other evidence in the case, the jury had the right to believe that the appellant, Emily Cornell, returned to the trailer slightly before daybreak in a highly drunken state, subconsciously placed the helpless infant in the bed and got in beside it, pulled the bed covers over

or around both of them, and fell into a sodden sleep which lasted for at least four hours, during which time the baby gradually smothered to death without aid from its drunken bed companion, despite the fact that its troubled screams could be heard throughout the whole of the immediate neighborhood and were sufficiently loud to have awakened the grandmother had she been in a sober condition.

Under these circumstances, the jury was warranted in finding that the death of the child was due to gross and flagrant neglect, on the part of Emily Cornell, amounting to culpable negligence within the definition given by our cases.

The appellants raise a question on this appeal and with reference to a certain colloquy between the presiding judge and one of the jurors concerning the proof required of the State as to the allegations of the information. It is insisted that certain answers given by the trial judge on the subject of inquiry led the jurors into error. We have carefully examined that portion of the record which bears on the point and are of conclusion that the contention is without merit.

We hold that as to Emily Cornell the judgment should be affirmed, but that as to Emily Dyer, the judgment should be reversed.

It is so ordered.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.