381 So.2d 1063 (1979)
SEABOARD COAST LINE RAILROAD COMPANY, Auto-Train Corporation, a Florida Corporation, Jensen of Jacksonville, Inc., a Florida Corporation, and Safeco Insurance Company, a Corporation, Appellants,
v.
Marion L. GRIFFIS, Pilot Equipment Company, Inc., a Florida Corporation, and Hartford Fire Insurance Company, Appellees.
Nos. HH-306, HH-307 and HH-316.
District Court of Appeal of Florida, First District.
January 9, 1979.
As Amended On Denial of Rehearings February 9, 1979.
Charles Cook Howell, III, Joseph P. Milton and James T. Terrell, Jacksonville, for appellants.
Charles T. Boyd, Jr., Jacksonville, Edna L. Caruso, Christian D. Searcy, West Palm Beach, and Henry M. Searcy, Jacksonville, for appellees.
MILLS, Acting Chief Judge.

Case Summary
Seaboard, Auto-Train and Jensen appeal from a final judgment entered in favor of Griffis, Pilot and Hartford following a jury *1064 trial of a railroad crossing case involving a collision between a train and a Gradall truck.

FACTS
On the morning of the accident Griffis was operating the Gradall on the side of the road northwest of the railroad crossing. He worked the Gradall, a 29-foot-long piece of construction equipment, eastward along the shoulder of the road toward the railroad tracks. The Gradall was being driven by him from the operating cab and from that position was incapable of attaining a speed of over five miles per hour. From any other position on the Gradall, it was capable of attaining speed of up to 50 miles per hour. When he was about 26 feet from the tracks, Jensen's construction foreman motioned for him to get out of the area because the Gradall was too close to the tracks.
Griffis moved the boom, including the operating cab and himself, until the boom faced southeast. He then proceeded to a point where the front of the Gradall was approximately 15 feet from the nearest or western-most track and came to a complete stop. He swung the boom to his left to look north, then swung the boom to his right to look south. Leaving the boom in the southeast position, he started over the tracks. He estimated that the front of the Gradall was between the west set of tracks and the east tracks when he first saw the train approaching from the north. He thought he could make it over the west set of tracks before the train reached the intersection.
Although the speed limit for trains in the area was 60 miles per hour, the approaching Auto-Train was traveling only 50 miles per hour. The engineer and fireman observed the Gradall begin to move forward after the train came around the curve north of the intersection. They estimated the distance of the engine from the intersection to be 450 to 600 feet when the Gradall began crossing the tracks. The train was approximately 50 to 75 feet from the crossing when the emergency brakes were activated. The train hit the rear three feet of the Gradall causing personal injuries to Griffis and property damage to the Gradall and the locomotive.
Griffis brought suit against Auto-Train for negligent operation of the train; Seaboard for negligent maintenance of the right of way and warning device and failure to maintain adequate warning devices and exercise reasonable care under the circumstances; and Jensen for failure to take proper precautions for Griffis' safety while working near the crossing. Pilot, the owner of the Gradall, was brought into the suit and numerous crossclaims and counterclaims were filed by the parties.
After trial the jury returned its verdict finding Griffis, Auto-Train, Seaboard, and Jensen guilty of negligence which was a contributing cause of the accident and assigned the following percentages: Griffis  15 percent; Auto-Train  45 percent; Seaboard  20 per cent; and Jensen  20 percent. The jury found the total amount of damages sustained by Griffis to be $75,000, by Auto-Train, $14,000, and by Pilot, $60,000.

ISSUE
Numerous points on appeal have been raised by Seaboard, Auto-Train and Jensen, but we have concluded that only one point merits discussion.
Seaboard contends that it was entitled to a directed verdict after all the evidence had been presented. We agree. The evidence did not support the allegations of negligence against Seaboard.

DECISION
Griffis alleged that Seaboard was negligent in that it:
"(a) Failed to exercise reasonable care required under the circumstances.
(b) Failed to maintain adequate warning devices and signals at the crossing in question.
(c) Failed to properly maintain the warning devices and signals which were in existence at the crossing in question.

*1065 (d) Failed to maintain the right of way adjacent to the tracks north of the crossing in question in a reasonably clean and unobstructed condition."
Pilot, in its crossclaim against Seaboard, made the same allegations of negligence as Griffis and in addition alleged:
"(e) Failure to provide and require speed restriction regulations and devices for trains operating through Green Cove Springs, Florida."
There was no evidence presented to support the allegation that Seaboard failed to maintain the right of way in a reasonably clean and unobstructed condition. Griffis testified that before he started across the tracks, he looked north along the tracks and could see all the way to the curve. He later measured the distance and determined that it was 1,042 feet. The officer who investigated the accident also did not note any obstructions to vision at the crossing.
There was no evidence presented that the existing warning signals at the crossing were improperly maintained. Griffis testified that he saw the railroad crossbuck sign and the vehicular stop sign. However, Griffis argues that these existing warning signals were inadequate and mechanical warning signals should have been installed. Seaboard contends that the crossbuck complied with its obligations under the law, Section 351.03, Florida Statutes (1977), and nothing more was required. We agree with Seaboard. When there is no evidence that the crossing is extra hazardous, nothing more than the warning devices required by statute must be provided. Atlantic Coast Line Railroad Co. v. Wallace, 61 Fla. 93, 54 So. 893 (Fla. 1911); Seaboard Coast Line Railroad Co. v. Welfare, 350 So.2d 476 (Fla. 1st DCA 1977). Griffis' contention that the crossing was extra hazardous because brush and undergrowth in the right-of-way obscured the view is unsupported by the evidence.
The major issue is whether, under the circumstances, Seaboard was negligent in failing to issue "slow orders" to trains going through Green Cove Springs. A "slow order" is an order used to restrict train speed at a given location or to warn the train of any hazard.
The evidence showed that Seaboard was aware of the road construction west of the crossing. Seaboard had representatives at the preconstruction conference, and Jensen gave Seaboard written notification of the commencement of the work. According to the plans and specifications, the project involved work on the west side of tracks within Seaboard's right of way, but never closer to the tracks than 15 feet from the western edge. The project did not involve work on the crossing or east of the crossing.
Griffis contends that there was sufficient evidence presented for the jury to determine that Seaboard was negligent in failing to issue "slow orders" to trains going through Green Cove Springs. Seaboard contends that mere evidence of construction work in the general area of railroad tracks is not, without more, sufficient to impose upon the railroad a duty to restrict the speed of trains through that area below the normal speed limit.
Negligence is the failure to observe, for the protection of another's interest, such care and precaution as the circumstances demand, or the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances. Russ v. State, 140 Fla. 217, 191 So. 296 (Fla. 1939). Where the facts are undisputed and reasonable persons, exercising fair and impartial judgment, could reach only one conclusion, the question of negligence becomes one of law. Stirling v. Sapp, 229 So.2d 850 (Fla. 1969).
As to Seaboard, the facts in this case are undisputed. Seaboard knew of the construction activity west of the tracks. The plans of the project showed that such activity would come no closer than fifteen feet away from Seaboard's westernmost track. There was no construction activity east of the tracks. We find that there is no reasonable inference which can be reached from the facts which would impose upon Seaboard the duty of issuing orders reducing the speed of trains through Green Cove *1066 Springs because of the construction activity.

JUDGMENT
Seaboard should have been granted a directed verdict on the issue of its negligence. This case is reversed as to Seaboard. It is affirmed in all other respects. It is necessary, however, to remand the case to the trial court for a new trial on the issue of liability for the purpose of determining what percentage of fault should be attributed to Griffis, Auto-Train and Jensen. A retrial on the issue of damages is unnecessary.
Affirmed in part, reversed in part and remanded.
ERVIN, J., and MASON, ERNEST E., Associate Judge, concur.