726 So.2d 330 (1999)
Nicholas Frank COPERTINO, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2326.
District Court of Appeal of Florida, Fourth District.
January 20, 1999.
Rehearing Denied March 16, 1999.
*332 Neil M. Nameroff of Neil M. Nameroff, P.A., Miami, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Defendant appeals his conviction for five counts of manslaughter by culpable negligence and six counts of culpable negligence. We affirm.
Defendant's principal argument in favor of a judgment of acquittal is that, because speed alone is insufficient to convict of manslaughter by culpable negligence, the trial judge should have taken this case from the jury. He relies on text in Filmon v. State, 336 So.2d 586, 590 (Fla. 1976). In Filmon, we note, there was actually much more for the jury to chew on than mere speed and drinking, so the case does not necessarily stand for the proposition. Actually the idea appears to have originated in Russ v. State, 140 Fla. 217, 191 So. 296 (1939), where the holding of the court was slightly different. The court said:
"The state contended that the excessive rate of speed of the car at the time of the collision was sufficient to bring the case within the rule [that the state must show that defendant's conduct was `of such a flagrant character as to evince reckless disregard of human life or the safety of persons exposed to its dangerous effects']. We cannot agree to this contention in the light of all the evidence in the record." [e.s.]
191 So. at 299. As the court explained:
"The gravamen of the charge here is that the car at the time of the accident was being driven at an excessive rate of speed. The evidence is conflicting as to the rate of speed traveled at the time of the accident, but is by the witnesses placed at from 25 to 60 miles per hour. The occupants of the car placed it from 25 to 35 miles; one or two witnesses near the scene of the accident estimated it to be from 40 to 50 miles, and others between 50 to 60. It is argued by the State that the excessive rate of speed at the time of the accident is fully established by the distance the car traveled before stopping after the collision."
191 So. at 299. In reversing the conviction, the Russ court determined that, taking as true all of the state's evidence as to the defendant's operation of the vehicle, the entire evidence simply did not rise to a level evincing reckless disregard for human life or the safety of persons exposed to its effects. At bottom, the court seems to have determined as a matter of law that the victim's negligence in darting into the highway under the circumstances was the major cause of the accident. Hence the speed of defendant's vehicle, even if in excess of the limit, did not seem to play so important a role in the court's determination as did the conduct of the deceased.
We think that the real rule gleaned from the cases is that mere speed greater than the lawful limit does not ordinarily by itself demonstrate the kind of gross, wanton and wilful conduct equated with a reckless disregard for human life or safety that is necessary to establish culpable negligence. In Russ the speed limit is not stated, and the evidence differed widely as to the rate of speed traveled, ranging from 20 to 60 mph. Merely driving 5 mph over the limit, for example, is unlikely to evidence the depraved kind of conduct necessary for culpable negligence. And so there is support in Russ for the notion that driving 50 mph in a 45 mph zone would not establish reckless disregard for human life in most circumstances.
For this crime of manslaughter by culpable negligence, however, it is one thing to speed slightly over the posted limit, and it is quite another matter to drive at such an immensely excessive rate that no one could reasonably drive. In our opinion, the rate of speed of a vehicle can be firmly shown by the evidence to be so excessive under the circumstances that to travel that fast under the conditions is by itself a reckless disregard for human life or the safety of persons exposed to the speed. For example, while driving 90 mph at Sebring on a test track might not even be negligent conduct, racing at 90 mph in front of school where children are entering *333 or leaving would surely be so flagrant as to show a reckless disregard for human life and safety. This case is of the latter kind. This defendant drove his vehicle at an enormously excessive speed at a time and in a place where it might have been dangerous to exceed the posted limits by even a little.
The speed was fixed authoritatively by the evidence at 90.41 mph! The place was a major thoroughfare near residential areas in a large metropolitan area. The time was in the late evening, long after sunset, with visibility necessarily reduced. The vehicle was a compact car (Honda Civic) filled with 9 persons, 7 of whom were crammed into the back seat without seatbelts. The driver was young and inexperienced. Driving this fast under these circumstances so logically evinces to us the required reckless disregard for human life or the consequences on the safety of his passengers contemplated by the statute that we frankly cannot see the plausibility of arguing otherwise. As in Filmon, we think this evidence is enough to establish culpable negligence manslaughter.
Defendant also contends that the trial court erred in failing to grant a change of venue. In carrying out our duty to make an independent evaluation of the circumstances, see Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), we conclude that there was no error in trying this case in Palm Beach County. The test for determining whether a change of venue must be granted is:
"whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and pre-conceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom."
McCaskill v. State, 344 So.2d 1276, 1278 (Fla. 1977); Rolling v. State, 695 So.2d 278, 284 (Fla. 1997). The trial court is required to analyze two factors: "(1) the extent and nature of any pretrial publicity; and (2) the difficulty encountered in actually selecting a jury." Rolling, 695 So.2d at 285 (citing Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)).
Of course, as the supreme court has observed, pretrial publicity is a fact of life, readily expected in cases such as this, and by itself does not require a change of venue. Provenzano v. State, 497 So.2d 1177, 1182 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987). The essential inquiry is whether prospective jurors can lay aside any impressions arising from pretrial publicity and decide the case alone on the evidence received in court and the law given to them by the trial judge. McCaskill, 344 So.2d at 1278. As the court did in Rolling, we consider the five factors relating to the extent and nature of pretrial publicity in this case and conclude that there is nothing so inflammatory in it to arouse suspicions as to the bias or prejudice of the venire. See Rolling, 695 So.2d at 285 ("the trial court must consider numerous factors, such as: (1) the length of time that has passed from the crime to the trial and when, within this time, the publicity occurred; (2) whether the publicity consisted of straight, factual news stories or inflammatory stories; (3) whether the news stories consisted of the police or prosecutor's version of the offense to the exclusion of the defendant's version; (4) the size of the community in question; and (5) whether the defendant exhausted all of his peremptory challenges.") (citations omitted).
Here defendant failed to establish a presumption of partiality because he failed to show from the publicity a general atmosphere deeply hostile to him. Copeland v. State, 457 So.2d 1012, 1016-1017 (Fla. 1984)(vacated and remanded on other grounds, Copeland v. Dugger, 565 So.2d 1348 (Fla. 1990)); see also Murphy, 421 U.S. at 800-803, 95 S.Ct. 2031. The publicity here was "largely factual, rather than emotional, in nature" and took place for the most part close to the time of the event.[1] There was *334 comparatively little difficulty in selecting a jury. The court granted only seven challenges for cause and allotted defendant two additional peremptory strikes, only one of which he actually used. The entire process of selecting the jury was completed within two days. We conclude that no error has been shown in keeping the trial in the county where the crime was said to have occurred.
Defendant also argues that two additional errors require a new trial. First, he contends that it was error for the trial judge to admit autopsy photographs of the victims  which gruesomely depicted the extent of the injuries  when this evidence was irrelevant to any issue in the case. Second, he contends that the prosecutor's characterization of defendant during closing argument as "young Mr. Hitler" was so inflammatory as to require a new trial in spite of the trial judge's admonition to the jury to disregard it.
The admission of the autopsy photographs of the victims served no purpose other than to highlight the horror of their injuries and deaths and was therefore improper. Plainly the prosecutor's "young Mr. Hitler" remark, too, is improper.[2] We understand the human tendency to identify with the victims of such senseless conduct and their families, as in this case where so many young people died. Prosecutors must nevertheless steel themselves against such emotions and direct their energies to presenting the state's case within the law. They are not given the right to voice the same emotions understandably expressed by the families of the victims.
Ordinarily it would be difficult for us to find the combined errors of the photos and the Hitler remark to be harmless. But in this case defendant has the burden of showing prejudicial error,[3] rather than the state showing beyond any reasonable doubt that the error was harmless.[4] Given the nature of defendant's conduct  driving 90 mph at night in a metropolitan area with a small car overloaded with passengers  we do not believe that either of these errors or their combined effect contributed to the jury's decision. The state's evidence in this case is so compelling that the jury returned the only verdict possible.
FARMER and SHAHOOD, JJ., concur.
DELL, J., concurs specially with opinion.
DELL, J., concurring specially.
I join with the majority in affirming appellant's conviction for five counts of manslaughter by culpable negligence and six counts of culpable negligence. The law is clear that the evidence of speed alone would not be sufficient to sustain his convictions of manslaughter by culpable negligence. However, here the record contains overwhelming evidence that appellant, by the extraordinary conditions under which he operated his vehicle, coupled with the speed of the vehicle, evinced a reckless disregard for human life or the safety of persons exposed to its dangerous effects.
NOTES
[1] We do note that the prosecutor who tried the case for the state was quoted in the press as saying that defendant drove his car "like a maniac and is responsible for killing five people." We deplore such pretrial comments by prosecuting attorneys and caution them that they are subject to sanctions for engaging in this kind of pretrial commentary. In this instance defendant offered little, if any, record support for a finding that the pretrial publicity in its entirety created the requisite kind of general atmosphere of hostility against him that would raise doubts about individual jurors' protestations of impartiality.
[2] This prosecutor engaged in conduct throughout the trial suggesting too much a personal interest in winning, rather than detached advocacy for the state.
[3] See § 924.051(1)(a), Fla. Stat. (1997) ("`Prejudicial error' means an error in the trial court that harmfully affected the judgment....").
[4] See § 924.051(7), Fla. Stat. (1997) ("In a direct appeal ... the party challenging the judgment... of the trial court shall have the burden of demonstrating that a prejudicial error occurred in the trial court."); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986) (in case of constitutional error, state has burden of showing beyond reasonable doubt that error did not contribute to verdict).