963 So.2d 831 (2007)
Carlos POZO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-3419.
District Court of Appeal of Florida, Fourth District.
August 8, 2007.
Rehearing Denied October 4, 2007.
*832 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Carlos Pozo appeals his conviction and sentence for vehicular homicide. He raises multiple claims of error, on which we affirm, including: (1) failure to grant a judgment of acquittal on the sufficiency of the evidence; (2) denial of a peremptory juror challenge for failure to give a race-neutral reason; (3) failure to give a special jury instruction; and (4) error in answering a jury question during deliberations. We reverse, however, because the trial court denied a post-trial motion to interview the jury when there was evidence of actual prejudice resulting from external juror influence.
Pozo and several classmates decided to skip school one morning to go to breakfast. All of the friends followed Pozo to his house so he could get some money. Caitlyn Kazanjian accompanied Pozo in his vehicle. As they entered the residential area, with a speed limit of thirty-five miles per hour, Pozo began driving very fast. One of his classmates and an independent eyewitness, Mr. Madsen, estimated his speed between seventy-five and ninety miles per hour. Pozo passed Madsen, who observed a rain shower just ahead of Pozo's vehicle. Madsen and Pozo's classmates lost sight of the vehicle when it disappeared around a curve in the road.
Around the curve, the classmates in the other vehicle found Pozo's vehicle wrapped around a tree. Both occupants had been ejected, and, tragically, Kazanjian, who *833 was wearing a seatbelt, died of her injuries.
At the scene, Officer Main, the police investigator, did not observe any skid marks, either because of the rain-slicked roadway or the failure to brake. Using the car remnants, Main later used a statistical measure to estimate that Pozo was traveling at least sixty-seven miles an hour at the time of the crash.
The police took a statement from Pozo in which he admitted speeding but estimated he was going no more than fifty-five miles per hour. He also explained that he had one hand on the steering wheel while he was picking out a CD to play. He claimed that a black vehicle entered the road from a side street, and he swerved to avoid the vehicle, causing him to lose control of his car.
The jury convicted Pozo of vehicular homicide. The court sentenced him to sixty-six months in prison, to be followed by sixty months of probation. This appeal follows.
Pozo argues that the evidence of vehicular homicide submitted by the prosecution was insufficient as a matter of law and that the court reversibly erred in denying Pozo's motion for judgment of acquittal. Pozo claims that the state based its case primarily on speed alone, which he claims is insufficient to support a charge of vehicular homicide. We agree with the state, however, that not only was the speed grossly excessive, but other factors were present which prevented the entry of a judgment of acquittal.
Although some courts have held that speed alone is insufficient to support a charge of vehicular homicide, see House v. State, 831 So.2d 1230, 1233 (Fla. 2d DCA 2002); Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983), we have held that grossly excessive speed alone can constitute such reckless conduct as to support a charge of manslaughter by culpable negligence. See Copertino v. State, 726 So.2d 330, 332-33 (Fla. 4th DCA 1999). The degree of culpability required to prove vehicular homicide "is less than culpable negligence, which is the standard for manslaughter, but more than a mere failure to use ordinary care." Michel v. State, 752 So.2d 6, 12 (Fla. 5th DCA 2000). In Copertino we explained:
For this crime of manslaughter by culpable negligence, however, it is one thing to speed slightly over the posted limit, and it is quite another matter to drive at such an immensely excessive rate that no one could reasonably drive. In our opinion, the rate of speed of a vehicle can be firmly shown by the evidence to be so excessive under the circumstances that to travel that fast under the conditions is by itself a reckless disregard for human life or the safety of persons exposed to the speed. For example, while driving 90 mph at Sebring on a test track might not even be negligent conduct, racing at 90 mph in front of school where children are entering or leaving would surely be so flagrant as to show a reckless disregard for human life and safety. This case is of the latter kind. This defendant drove his vehicle at an enormously excessive speed at a time and in a place where it might have been dangerous to exceed the posted limits by even a little.
726 So.2d at 332-33 (emphasis in original). Similarly, based upon the state's evidence, Pozo was driving anywhere from sixty-seven to ninety miles per hour in a residential neighborhood. That fact alone places this case in line with Copertino and justified the denial of the motion for judgment of acquittal, particularly given that the recklessness necessary to prove vehicular homicide is less than that of culpable *834 negligence. However, in addition to that, Pozo was playing with his CD, being inattentive to his speed in rainy conditions, and rounding a curve in the road. These factors, combined with his speed, provide more than ample evidence to withstand the motion. See also D.E. v. State, 904 So.2d 558 (Fla. 5th DCA 2005); Byrd v. State, 531 So.2d 1004 (Fla. 5th DCA 1988).
We dispense with the other trial issues summarily. Pozo challenged the state's strike of a Hispanic juror. However, he failed to preserve the issue by renewing his objection before the jury was sworn. Melbourne v. State, 679 So.2d 759, 765 (Fla.1996); Joiner v. State, 618 So.2d 174, 176 (Fla.1993). The court did not err in refusing a special jury instruction stating that speed alone is insufficient to prove vehicular homicide. As we have noted in ruling on the motion for judgment of acquittal, in this case the grossly excessive speed alone would have been sufficient to prove the case even though there were clearly other factors present. The court did not abuse its discretion in refusing this instruction. See Campbell v. State, 812 So.2d 540, 543-44 (Fla. 4th DCA 2002). Finally, we find no error in the court's comments to the jury, as we do not view them as comments on the evidence.
After the verdict, a juror wrote to the judge of her dismay over the jury deliberations. In her letter, the juror stated that she was concerned about Pozo's sentence and expressed a desire that his teen years not be wasted. Additionally, she stated:
Another struggle I am having is the aggressive behavior by two of my fellow jurors. Three of the jurors were not included until the very end. And one who was remaining not guilty changed her mind after conversations that were fabricated about the possibilities of the defendants [sic] character as well as our own security. It was brought up that Palm Beach County Sheriff's office might harass us if we came back with a[not] guilty verdict.[1]
In the following paragraph, the juror stated, "If this young man receives jail time, I will feel obligated to apologize to the Pozo family for my ignorance about the charge and for feeling pressured to vote the way I did."
Upon becoming aware of this letter, Pozo's counsel filed a notice of intention to interview jurors, claiming that the letter reflected that this juror and possibly other jurors were concerned about repercussions to themselves by Palm Beach County Sheriff's Office employees if they returned a not guilty verdict. The deceased victim was the daughter of a Palm Beach County Sheriff's deputy.
At the hearing on the motion, defense counsel pointed out that several members of the Palm Beach County Sheriff's Office sat in the court during the trial wearing t-shirts which showed that they were with the sheriff's department. That occurred despite a prior agreed order entered by the trial court that observers would be precluded from wearing buttons or t-shirts reflecting a bias for or against the state or the victim. Given the juror's allegations that the jurors discussed the possibility that the Palm Beach Sheriff's Office would harass jurors if they did not vote to convict, defense counsel argued that this external influence on the jury verdict needed to be investigated.
In contrast, the state argued that the comments by the juror involved matters *835 which inhere to the jury verdict, and thus inquiries could not be made. The trial court noted that no sworn affidavits were presented, but in any event the allegations did not necessitate further inquiry. On this issue, we reverse.
Florida Rule of Criminal Procedure 3.575 provides the procedure for interviewing jurors in criminal cases. See Amendments to the Florida Rules of Criminal Procedure, 886 So.2d 197 (Fla.2004). This rule became effective January 1, 2005, which was before the hearing in the June 2005 trial in the instant case. Rule 3.575 states:
A party who has reason to believe that the verdict may be subject to legal challenge may move the court for an order permitting an interview of a juror or jurors to so determine. The motion shall be filed within 10 days after the rendition of the verdict, unless good cause is shown for the failure to make the motion within that time. The motion shall state the name of any juror to be interviewed and the reasons that the party has to believe that the verdict may be subject to challenge. After notice and hearing, the trial judge, upon a finding that the verdict may be subject to challenge, shall enter an order permitting the interview, and setting therein a time and a place for the interview of the juror or jurors, which shall be conducted in the presence of the court and the parties. If no reason is found to believe that the verdict may be subject to challenge, the court shall enter its order denying permission to interview.
The rule does not require the filing of sworn affidavits in order to interview a juror, and in this respect the rule digresses from prior case law. See, e.g., Reaves v. State, 826 So.2d 932 (Fla.2002); Johnson v. State, 804 So.2d 1218 (Fla.2001). All that is required under the rule is a statement of reasons why the verdict may be subject to challenge. Therefore, rejecting juror interviews for the failure to have sworn proof was error.
As the supreme court said in Reaves, "Juror interviews are not permitted relative to any matter that inheres in the verdict itself and relates to the jury's deliberations. To this end, any jury inquiry is limited to allegations which involve an overt prejudicial act or external influence. . . ." 826 So.2d at 943 (footnote omitted). In this case, the motion recited the juror's own letter to the trial judge, indicating that the jurors discussed fear of harassment by the sheriff's office should the jury not convict. This discussion, coupled with the presence of clearly identified sheriff's office members in the gallery, showed that influences external to the evidence presented during the trial may have influenced the verdict. Thus, this matter may be the subject of juror interview.
The right to a jury trial is one of the most precious rights of the American system of justice. As noted in Woods v. Dugger, 923 F.2d 1454, 1456 (11th Cir. 1991):
The due process clause of the Fourteenth Amendment guarantees the right of state criminal defendants to be tried by an impartial jury. The Fourteenth Amendment incorporates the essence of the Sixth Amendment right to be tried "by a panel of impartial, `indifferent' jurors [whose] verdict must be based upon the evidence developed at the trial." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) (citations omitted). As Chief Justice Warren noted in his concurrence in Estes v. Texas, 381 U.S. 532, 552, 85 S.Ct. 1628, 1637, 14 L.Ed.2d 543 (1965) (Warren, C.J., concurring) due process requires the courts to safeguard against "the intrusion of factors into the trial process *836 that tend to subvert its purpose." Id. at 560, 85 S.Ct. at 1641.
In Woods, the defendant was on trial for first-degree murder of a correctional officer at Union Correctional Institute in Union County, Florida. The crime attracted substantial pre-trial publicity and comment in this small close-knit community. During the trial the gallery was populated with uniformed correctional officers from the prison system. Defense counsel objected, and the trial court even took video of the gallery. Many of the jurors either worked for the prison system or had relatives working for the system. Woods was convicted of first-degree murder and sentenced to death.
After exhausting state appeals, on petition for habeas corpus relief to the federal courts, Woods argued that he was denied a fair trial because of the hostile atmosphere surrounding his trial, particularly focusing on the correctional officers in the gallery. The trial court denied relief, but on appeal, the Eleventh Circuit reversed finding that Woods had proven presumed prejudice in the court proceedings. The court held that under the facts presented, Woods had met the high burden of showing inherent prejudice to his right to a fair trial and granted a new trial.
The Woods court looked to Holbrook v. Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), in which the Supreme Court considered the prejudicial effect of having a number of uniformed state troopers sitting in the front of the gallery during the trial of the defendant. The Court determined that the presence of the officers was not so great as to be inherently prejudicial, reasoning that officer security in most courtroom settings would not impress upon the jury any unusual cause for alarm which would affect the fairness of the jury's fact-finding process. To guide federal review of future state trials the Court articulated the following test:
All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.
Id. at 572, 106 S.Ct. 1340 (emphasis supplied). Thus, pursuant to Holbrook, a defendant must either show inherent prejudice or actual prejudice to the fairness of the fact-finding process in order to establish a violation of the defendant's constitutional right to a fair trial.
What constitutes "actual prejudice" in the context of jury deliberations has not been directly addressed by the Florida courts in circumstances such as these. In Pope v. State, 569 So.2d 1241 (Fla.1990), the court discussed whether actual prejudice had been shown where a juror had brought a newspaper into the jury box during deliberations in violation of instructions not to read media coverage about the case. The court noted that no actual prejudice had been shown, because the trial court had inquired of the juror and had been assured that the juror had not read anything about the case. One may surmise from this that had the juror read about the case, then that objective fact was sufficient to show actual prejudice.
Actual prejudice does not mean that the juror is actually influenced by the external or overt act to reach a particular verdict. Because a court may not inquire into a juror's thought processes, a court's inquiry as to influences over a jury's verdict is necessarily limited to:
objective demonstration of extrinsic factual matter disclosed in the jury room. *837 Having determined the precise quality of the jury breach, if any, the [trial] court must then determine whether there was a reasonable possibility that the breach was prejudicial to the defendant. . . . Though a judge lacks even the insight of a psychiatrist, he must reach a judgment concerning the subjective effects of objective facts without benefit of couch-interview introspections. In this determination, prejudice will be assumed in the form of a rebuttable presumption, and the burden is on the Government to demonstrate the harmlessness of any breach to the defendant.
State v. Hamilton, 574 So.2d 124, 129 (Fla. 1991) (quoting United States v. Howard, 506 F.2d 865, 869 (5th Cir.1975)).
In the context of outside influences on jury verdicts, we find Howard v. State, 941 S.W.2d 102 (Tex.Crim.App.1996) instructive. There, in deciding whether actual or inherent prejudice to the jury process occurred due to the presence of twenty uniformed officers in the gallery, the court noted:
A defendant, to prevail on an appeal claiming reversible prejudice resulting from external juror influence, must show either actual or inherent prejudice. To determine inherent prejudice, we look to whether "an unacceptable risk is presented of impermissible factors coming into play." Holbrook v. Flynn, 475 U.S. at 570, 106 S.Ct. at 1346-47 (citing Estelle v. Williams, 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)). Obviously, the test to determine actual prejudice-the result of external juror influence-would be whether jurors actually articulated a consciousness of some prejudicial effect.12
12 Appellant does not here make an effective argument for actual prejudice. At no time were jurors questioned regarding their conscious perception of impermissible external influence.

Id. at 117 (emphasis supplied). This construction of actual prejudice involved in external influence on juries seems to be a correct one. Jurors may not be interrogated as to whether the influence actually affected their decision. It is sufficiently deleterious to the concept of a fair and impartial jury for the jury to have consciously contemplated the outside influence and its potential effect on their verdict. The actual prejudice standard cannot require that a defendant prove that a juror is actually influenced by the outside pressure. To require that is to demand that a defendant inquire into matters that do inhere in the jury verdict.
Given these precepts, it is clear that Pozo's counsel's motion to interview the jurors presented a reason to believe that the jury verdict was subject to challenge. The juror's letter to the judge showed the jury's consciousness of external influences on it and their potential for affecting the verdict. The court erred in denying the motion to interview the jurors.
We reverse and remand for further proceedings on the motion to interview the jurors.
POLEN and HAZOURI, JJ., concur.
NOTES
[1] Although the juror wrote the word "guilty," Pozo claims the indication is that she meant "not guilty."