ON MOTION FOR REHEARING
 

 TAYLOR, J.
 

 The defendant timely filed a motion for rehearing directed to our opinion dated November 18, 2009. We grant the motion for rehearing to the extent of substituting this opinion for our original opinion.
 

 In this prosecution for vehicular homicide, the state appeals the trial court’s order granting the defendant’s motion to suppress evidence seized after execution of a search warrant. The trial court found that the affidavit and application for a search warrant for the “black box” from the defendant’s vehicle lacked sufficient facts to establish probable cause for issu-
 
 *210
 
 anee of the warrant. We disagree and reverse.
 

 On September 25, 2006, around 12:48 p.m., the defendant was driving his Corvette northbound on Military Trail in the right lane, when Joseph Hatton, driving a Toyota Camry southbound in the left lane of Military Trail, attempted to make a left turn onto N.W. 5th Street in Deerfield Beach. The cars collided, and Hatton died as a result of his injuries from the crash.
 

 Detective John Grimes of the Broward County Sheriffs Office investigated the accident and filed a General Affidavit and Application for Search Warrant for the sensing and diagnostic module (“SDM”) (also known as a “black box”) from the defendant’s vehicle. The officer alleged in his affidavit that his investigation “reveal[ed] that [the defendant] ... was traveling well in excess of the [40-m.p.h.] posted speed limit.” He stated that the “[p]ost impact distance traveled by both vehicles was greater than one hundred twenty five feet. There were no pre-impact tire marks, suggesting that no braking took place before impact. Post impact tire marks along with physical evidence on scene suggest that [the defendant’s] vehicle was traveling in excess of 70 [m.p.h.].” The affidavit further reported that an eyewitness “stated that she heard the tires on the vehicle that [the defendant] was driving ‘chirp’ as the vehicle was changing into a faster gear.”
 

 The officer explained in the affidavit that the “black box” located in the defendant’s vehicle “may contain electronically stored data including, but not limited to, data pertaining to the pre impact speed of the vehicle, airbag system deployment time and status, engine RPM’s, brake circuit status, seat belt circuit status, Delta ‘V’ readings, and ignition cycles.” A search warrant was issued and executed.
 

 The defendant filed a motion to suppress physical evidence from his vehicle, including information downloaded from the black box. After a hearing on the motion, the trial court granted the defendant’s motion to suppress the evidence. The court concluded “[t]hat the general affidavit and application for search warrant did not contain specific and sufficient facts to establish probable cause that a crime had been committed and that the evidence of that crime would be found in the defendant’s vehicle. Speed alone was insufficient.”
 

 We review an appeal of an order granting a motion to suppress under the following standard of review:
 

 Typically, “[t]he standard of review applicable to a motion to suppress evidence requires that this Court defer to the trial court’s factual findings but review legal conclusions de novo.”
 
 Backus v. State,
 
 864 So.2d 1158, 1159 (Fla. 4th DCA 2003) (citing
 
 Batson v. State,
 
 847 So.2d 1149, 1150 (Fla. 4th DCA 2003)). However, where the issuance of a search warrant based on a probable cause affidavit is at issue, the standard of review is not de novo, but rather a standard of “great deference.”
 
 See United, States v. Soderstrand,
 
 412 F.3d 1146, 1152 (10th Cir.2005). This standard of “great deference” is defined as follows:
 

 “The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of reviewing courts is simply to ensure that the magistrate had a ‘substantial basis for ... concluding]’ that probable cause existed.”
 
 *211
 

 DeLaPaz v. State,
 
 453 So.2d 445, 446 (Fla. 4th DCA 1984) (quoting
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983));
 
 see also Schmitt v. State,
 
 590 So.2d 404, 409 (Fla.1991) (same). When so reviewing the issuance of a warrant based on a probable cause affidavit, a court is confined to a consideration of the four corners of the probable cause affidavit.
 
 See Schmitt,
 
 590 So.2d at 409;
 
 Brachlow v. State,
 
 907 So.2d 626, 628 (Fla. 4th DCA 2005). In sum, “[although the reviewing court ‘should afford a magistrate’s probable cause decision great deference,’ it should ‘not defer if there is no “substantial basis for concluding that probable cause existed.’”
 
 United States v. Beck,
 
 139 Fed.Appx. 950, 954 (10th Cir.2005).
 

 State v. Rabb,
 
 920 So.2d 1175, 1180-81 (Fla. 4th DCA 2006) (alterations in original).
 

 A search warrant for property may be issued “[w]hen any property constitutes evidence
 
 relevant to proving
 
 that a felony has been committed.” § 933.02(3), Fla. Stat. (2006) (emphasis added).
 

 For the magistrate to determine that probable cause exists to issue a search warrant, two elements must be proven within the affidavit: “(1) the commission element—that a particular person has committed a crime—and (2) the nexus element—that
 
 evidence relevant to the probable cñminality
 
 is likely to be located at the place searched.”
 
 State v. Vanderhors,
 
 927 So.2d 1011, 1013 (Fla. 2d DCA 2006) (citing
 
 Burnett v. State,
 
 848 So.2d 1170, 1173 (Fla. 2d DCA 2003)) (emphasis added).
 

 The Florida Supreme Court “defined ‘probable cause’ as a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person in the belief that the person is guilty of the offense charged. The reasons cited by the police must be sufficient to create a reasonable belief that a crime has been committed. As long as the neutral magistrate has a substantial basis for concluding that a search would uncover evidence of wrongdoing, the requirement of probable cause is satisfied.”
 
 Schmitt v. State,
 
 590 So.2d 404, 409 (Fla.1991) (internal citations omitted). Further, the “existence of probable cause is not susceptible to formulaic determination. Rather, it is the ‘probability, not a prima facie showing, of criminal activity [that] is the standard of probable cause.’ ”
 
 Doorbal v. State,
 
 837 So.2d 940, 952-53 (Fla.2003) (citing
 
 Illinois v. Gates,
 
 462 U.S. 213, 230-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) (alterations in original). The issuing magistrate’s duty “is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that ... evidence of a crime will be found in a particular place.”
 
 Rabb,
 
 920 So.2d at 1180 (internal quotations and citations omitted).
 

 Vehicular homicide is “the killing of a human being ... caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.” § 782.071, Fla. Stat. (2006). Vehicular homicide, by definition, requires proving reckless driving, which is “driving with a willful or wanton disregard for safety.”
 
 D.E. v. State,
 
 904 So.2d 558, 561 (Fla. 5th DCA 2005);
 
 accord
 
 § 316.192(1)(a), Fla. Stat. (2006).
 

 We have held that “the rate of speed of a vehicle can be firmly shown ... to be
 
 so
 
 excessive under the circumstances that to travel that fast under the conditions is by itself a reckless disregard for human life or the safety of persons exposed to the speed.”
 
 Coperlino v. State,
 
 726 So.2d 330, 332 (Fla. 4th DCA 1999). Speeding above
 
 *212
 
 the limit — for example, only five miles per hour above — does not normally prove the gross, wanton, or willful conduct that is associated with the “reckless disregard for human life or safety.”
 
 Id.
 
 We distinguished between speeding slightly over the speed limit, and speeding at “such an immensely excessive rate that no one could reasonably drive.”
 
 Id.
 

 Although other “circumstances” are necessary to make a prima facie showing
 
 [1]
 
 of vehicular homicide, such as location, time of day, and road conditions,
 
 see id.,
 
 that is not the standard for probable cause in order to issue a search warrant. A magistrate may issue the search warrant “[w]hen any property constitutes evidence
 
 relevant to proving
 
 that a felony has been committed.” § 933.02(3), Fla. Stat. (emphasis added). Excessive speed is a major factor in finding the crime of vehicular homicide occurred and therefore is relevant to proving the felony was committed, as required by section 933.02(3).
 
 See Copertino,
 
 726 So.2d at 332-33 (affirming conviction of manslaughter by culpable negligence because the defendant was young, inexperienced, operating his vehicle in the late evening with reduced visibility at a major thoroughfare near residential areas in a large city, and his speedometer was locked at 90.41 m.p.h.);
 
 Pozo v. State,
 
 963 So.2d 831, 832-33 (Fla. 4th DCA 2007) (holding that the mere fact that the defendant was driving at an excessive speed, between 67 and 90 m.p.h., in a residential neighborhood was enough to bring his case in line with
 
 Copertino
 
 and justify denying his motion for judgment of acquittal).
 

 Here, the detective presented enough facts in his affidavit for the magistrate to make a practical, common-sense decision, based on the circumstances set forth in the affidavit, that the defendant committed the alleged crime (the commission element) and that “evidence relevant to the probable criminality [of vehicular homicide was] likely to be located at the place searched” — the Corvette’s black box (the nexus element).
 
 See Vanderhors,
 
 927 So.2d at 1013. The affidavit alleged that the accident occurred on a Monday afternoon at 12:48 p.m. at the intersection of North Military Trail and N.W. 5th Street in Deerfield Beach. The affidavit further alleged that the defendant was traveling over 70 m.p.h., “well in excess of the [40-m.p.h.] posted speed limit.” Finally, the affidavit alleged that the vehicles traveled one-hundred-twenty-five feet after impact, that the lack of pre-impact tire marks suggested braking did not occur, and that a witness heard the gears “chirp” as the car accelerated to a faster gear. These facts showing excessive speed support the finding that there was a probability, though not necessarily a prima facie showing, of criminal activity — “operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.” § 782.071, Fla. Stat.
 

 The magistrate needed only to determine whether the facts related in the supporting affidavit were sufficient to justify a probable cause determination, not whether the facts made a prima facie showing that the crime occurred.
 
 Doorbal,
 
 837 So.2d at 952-53. Because the general affidavit and application for the search warrant in this case contained sufficient facts to establish probable cause that vehicular homicide was committed and that the evidence of that crime would be found in the defendant’s vehicle, the magistrate properly issued the search warrant. Accordingly, we
 
 *213
 
 reverse the trial court’s order suppressing the evidence.
 

 Reversed.
 

 GROSS, C.J., and HAZOURI, J., concur.
 

 [1]
 

 . The defendant in
 
 Copertino
 
 appealed the denial of his motion for judgment of acquittal, 726 So.2d at 332, which has a higher standard than probable cause.